No. 07-5299

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| Appellee, | ) |
| | ) |
| vs. | ) |
| | ) |
| | ) |
| MICHAEL CARL VASSAR | ) |
| | ) |
| Appellant | ) |

ON APPEAL FROM THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT
OF TENNESSEE AT GREENEVILLE

---

**APPELLANT'S OPENING BRIEF**

---

HERBERT S. MONCIER
Attorney for Appellant
550 Main Avenue, Suite 775
Bank of America Building
Knoxville, Tennessee  37902
(865)546-7746
BPR #1910

**ORAL ARGUMENT REQUESTED**

## CORPORATE DISCLOSURE STATEMENT

Appellant discloses pursuant to Sixth Circuit Rule 26.1 that:

1.    Appellant is not subsidiary or an affiliate of a publicly owned corporation.

2.    There is no publically owned corporation, not a party to this appeal that has a financial interest in the outcome.

s/Herbert S. Moncier
Counsel for Appellant
Date: January 5, 2009

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ...............................ii

TABLE OF CONTENTS ...........................................iii

TABLE OF AUTHORITIES ........................................vi

STATEMENT IN SUPPORT OF ORAL
ARGUMENT ....................................................xii

JURISDICTIONAL STATEMENT .....................................1

STATEMENT OF THE ISSUES .....................................2

SUMMARY OF ARGUMENTS ........................................4

STATEMENT OF THE CASE .......................................6

STATEMENT OF FACTS .........................................10

ARGUMENT ...................................................15

    I. Vassar's Conspiracy Indictment Is
       Insufficient. ........................................15

        Fifth Amendment Grand Jury
          Compliance .....................................15

        Elements Of A Drug Conspiracy ..................16

    II. Insufficient Evidence Of A Single
       Charged Conspiracy. .................................23

    III. Erroneous Denial Of Bill Of
       Particulars. .......................................29

    IV. Erroneous Application of
       Fed.R.Evid. 406 To Prohibit A
       Determination Whether The Jury's
       Verdict Was An Unlawful
       Conspiracy. .........................................37

        Requested Relief ...............................39

    V. Fed.R.Evid 801(d)(2)(E) Violation By
       Admission Of Gunter's Statement To
       D.L.Phillips About Vassar. .........................39

    VI. Sixth Amendment/Crawford Violation
       By Admitting Fann's Recording Of
       His Own Statement While An Agent. ..................43

VII. Erroneous Denial Of Fed.R.Crim.P. 16(a)(1)(E)(i) Records For Impeaching Government Witnesses ..................... 44

VIII. Denial of Fed.R.Crim.P. 17(c) And Sixth Amendment Compulsory Process .................. 49

      Review Standard ............................. 49

IX. Vassar was denied *Pennsylvania v. Ritchie* Due Process. ........................... 52

X. Improper Arguments By The Prosecutor. ................................ 55

XI. Incorrect And Misleading Jury Instructions. ............................... 58

XII. Vassar's Sentence Was A Product Of Prosecutorial Misconduct By Selective Application Manipulating the USSGs ........................................ 62

XIII. Vassar Was Sentenced For An Incorrect Conspiracy Offense Of Conviction. ................................... 65

      Applicable Law ............................... 65

      Sentencing Conspiracy Liability ................................. 66

      USSG 1B1.3(a)(1)(B) ......................... 66

      Judge Greer Found A Separate Conspiracy .............................. 67

      Sixth Amendment Right To Jury ................. 67

      Relief Requested ............................. 68

XIV. Vassar's Sentence Was Procedurally and Substantively Unreasonable. ..................... 68

      Review Standard ............................. 68

      Vassar's Sentencing Position ................. 68

      Government's Sentencing Position ................................. 69

      District Court's Sentencing ................. 69

      Procedural and Substantive Reasons Vassar's Sentence Is Unreasonable .................. 69

CONCLUSION ................................................... 84

CERTIFICATE OF COMPLIANCE .................................... 84

CERTIFICATE OF SERVICE ....................................... 84

**Cases**

*Bills v. Aseltine*, 52 F.3d 596, 605 (C.A.6,1995) .............................................. 39

*Crawford v. Washington,* 541 U.S. 36 (2004) .................... 46

*Cunningham v. California*, 549 U.S. 270, 127 S.Ct. 856 (2007) ........................................... 87

*Fleischut v. Detroit Diesel, Inc.,* 859 F.2d 26, 30 (C.A.6,1988) ......................................... 30

*Gall v. U.S.*, 128 S.Ct. 586, 589 (2007) ................... 73, 83

*Giglio v. U.S*, 405 U.S. 150, (1972) ........................... 50

*Giles v. California*, 128 S.Ct. 2678 (2008) ................... 46

*Hamling v. U.S.*, 418 U.S. 87 (1974) .......................... 17

*Heckler v. Chaney*, 470 U.S. 821 (1985) ....................... 71

*Holmes v. South Carolina*, 547 U.S. 319 (2006) ...................................................... 40

*In re Winship*, 397 U.S. 358 (1970) ........................... 94

*Keeble v. U.S.*, 412 U.S. 205 (1973) .......................... 66

*Kimbrough v. U.S.*, 128 S.Ct. 558 (2007) ...................... 73

*Manning v. Waring et al.*, 849 F.2d 56 (C.A.6,1988) ............................................... 91

*Maples v. Stegall*, 340 F.3d 433, 436 (C.A.6,2003) ............................................... 31

*Oyler v. Boles*, 368 U.S. 448 ................................. 72

*Rita v. U.S.*, 127 S.Ct. 2456 (2007) .......................... 87

*Russell v. U.S.*, 369 U.S. 749 (1962) ......................... 16

*Schneider v. City of Jackson*, 226 S.W.3d 332 (Tenn.2007) .............................................. 60

*State v. Byrd*, 820 S.W.2d 739 (Tenn.,1991) ................... 31

*Toth v. Grand Trunk R.R.*, 306 F.3d 335 (C.A.6,2002) ............................................... 30

*U.S. v. Able*, 469 U.S. 45, 50, (1984) ........................... 52

*U.S. v. Batchelder*, 442 U.S. 114 (1979) ..................... 71

*U.S. v. Boles,* 511 F.3d 568 (C.A.6,2007) ................... 74

*U.S. v. Burr*, 25 F.Cas. 30 (No. 14,692d)(CC Va. 1807) ............................................... 51,57

*U.S. v. Caver*, 470 F.3d 220 (C.A.6,2006) ................... 24

*U.S. v. Cecil*, 608 F. 2d 1294 (C.A.9,1979) ................... 22

*U.S. v. Cousins*, 469 F.3d 572 (C.A.6,2006) ................... 73

*U.S. v. Crayton*, 357 F.3d 560 (C.A.6 2004) ................... 30

*U.S. v. Enright*, 579 F.2d 980 (1978) ........................... 22

*U.S. v. Garcia*, 497 F.3d 964 (C.A.9,2007) ................... 93

*U.S. v. Garner*, 507 F.3d 399 (C.A.6, 2007) ............... 33, 48

*U.S. v. Gatewood,* 173 F.3d 983 (C.A.6,1999) ................... 15

<u>*U.S.*</u> *v. Gessa*, 971 F.2d 1257 (C.A.6,1992)(en banc) ............................................... 41

U.S. v. Ghazaleh, 58 F.3d 240 (C.A.6,1995) ................... 28

*U.S. v. Griffin*, 494 F.Supp.2d 1 (D.Mass.,2007) ............................................... 88

*U.S. v. Haskins*, 345 F.2d 111 (C.A.6,1965) ............ 31, 32, 37

*U.S. v. Heavrin*, 330 F.3d 723 (C.A.6,2003) ................... 30

*U.S. v. Hernandez*, 476 F.3d 791 (C.A.9,2007) ................... 66

*U.S. v. Holmes*, 413 F.3d 770 (C.A.8,2005) ................... 63

*U.S. v. Hubble*, 530 U.S. 27 (2000) ........................... 52

*U.S. v. James*, 819 F.2d 674 (6th.Cri.,1987) ................... 64

*U.S. v. Jeross*, 521 F.3d 562 (C.A.6,2008) ................... 85

*U.S. v. Johnson*, 440 F.3d 832 (C.A.6,2006) ................... 46

*U.S. v. Kayser*, 488 F.3d 1070 (9th.Cir.,2007) ............................................ 64

*U.S. v. Kueke*, -- F.3d -- (C.A.6,2008) ........................ 18

*U.S. v. Larson*, 1997 WL 535780*4, (C.A.6,1997) ................................. 18, 20, 27, 65

*U.S. v. Larson*, 1997 WL 535780 (C.A.6,1997) .................. 27

*U.S. V. Martinez*, 981 F.2d 867 (C.A.6,1992) .................. 19

*U.S. v. Millett*, 510 F.3d 668 (C.A.7,2007) .................. 93

*U.S. v. Ming Liou*, 491 F.3d 334 (C.A.,2007) .................. 76

*U.S. v. Mitchell*, 765 F. 2d 130 (C.A.10,1985) ............................. 22, 36

*U.S. v. Mooneyham,* 473 F.3d 280 (C.A.6,2007) ................ 47

*U.S. v. Moreno*, 899 F.2d 465 (C.A.6,1990) .................. 63

*U.S. v. Mustafa,* 173 F.3d 430 (Table) 1999 WL 96473 (C.A.6,1999) ........................ 19

*U.S. v. Narciso*, 446 F.Supp. 252 (D.C.,Mich.,1977) ............................. 27, 86

*U.S. v. Ninety Three Firearms*, 330 F.3d 414 (C.A.6,2003) .......................... 47

*U.S. v. Nixon*, 418 U.S. 683 (1974) ..................... 30, 56

*U.S. v. Owens*, 426 F.3d 800 (C.A.6,2005) .................. 24

U.S. v. Pennell, 737 F.2d 521 (C.A.6,1984) ........ 20, 27, 40, 66

*U.S. v. Pinkerton*, 328 U.S. 640 (1946) ................. 21, 74

*U.S. v. Presley*, -- F.3d -- (CA6, 2008) .................. 70, 83

*U.S. v. Presser,* 844 F.2d 1275 (C.A.6, 1988) .................. 51

*U.S. v. Prince*, 214 F.3d 740 (C.A.6,2000) ............... 64, 65

*U.S. V. Pupo,* 841 F.2d 1235 (C.A.4,1988) .................. 18

*U.S. v. Santos*, 128 S.Ct. 2020 (2008) ....................... 67

*U.S. v. Simmons*, 142 F.3d 441 (Table, 1998 WL 231103 (7th.Cir.1998) ....................................23

*U.S. v. Solorio*, 337 F.3d 580 (C.A.6,2003) ...................85

*U.S. v. Swafford* ......................................24, 26, 28

*U.S. v. Swiney*, 203 F.3d 397, (C.A.6,2000) ...................74

*U.S. v. Tarwater*, 308 F.3d 494, 511 (C.A.,2002) ..............................................61

*U.S. v. Thomas*, 150 F.3d 743 (C.A.7,1998) ...........28, 57, 65

*U.S. v. Vinson*, 606 F.2d 149 (1979) .....................22, 47

U.S. v. Warner, 690 F.2d 545, 548-549 (C.A.6,1982) ............................................28

*U.S. v. Watts,* 519 U.S. 148, 566 fn 2, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997) .........................94

*U.S. v. White*, 503 F.3d 487 (C.A.6,2007) ....................93

*Wayte v. U.S.,* 470 U.S. 588 (1985) ..........................71

*Wood v. U.S.*, 342 F.2d 708 (8th.Cir.,1965) ..............27, 86

*Yick Wo v. Hopkins*, 118 U.S. 356, (1886) ....................72

**Statutes**

18 U.S.C. §3553(a)(1)(6) .................................73, 80

18 U.S.C. §3553(a)(2) .......................................79

18 U.S.C. §3553(a)(6) ...............................63, 74, 76

18 U.S.C. §924(c) ...........................................18

18 U.S.C. §3553(a) ......................................passim

21 U.S.C. §876 ..............................................51

28 U.S.C. §455 ..............................................80

**Other Authorities**

USSG §2D1.2(c)(Table) .......................................79

USSG §3C1.1 .................................................... 70

USSG §4A1.2 .................................................... 69

USSG §5K.1 ..................................................... 63

USSG §5K1.1 ...............................................passim

USSG §6A1.3 ............................................ 72, 73, 74

USSG §5K1.2 .................................................... 83

USSG §6A1.3, Commentary, Second Sentence, ..................... 72

USSG 1B1.3(a)(1)(B) ........................................... 66

USSG Amendment 709 ........................................... 70

*Diagnostic and Statistical Manuel* IV,
   Psychiatric Disorders: Substance Abuse ...................... 83

Sixth Circuit Pattern Instruction 3.08 ¶2 .................... 61

**Rules**

EDTN LR 83.6 .................................................. 57

Fed.R.Civ.P. 16(d)(2)(C) ...................................... 47

Fed.R.Crim.P. 16(a) ......................................passim

Fed.R.Crim.P. 16(a)(1)(E)(i) .............................passim

Fed.R.Crim.P. 16(d)(2) ........................................ 47

Fed.R.Crim.P. 32(i)(1)(B) ................................. 80, 81

Fed.R.Crim.P. 32(i)(3)(B) ..................................... 76

Fed.R.Crim.P. 32(i)(4)(ii) .................................... 72

Fed.R.Crim.P. 34 .............................................. 22

Fed.R.Crim.P. 7(f) ............................................ 30

Fed.R.Evid 801(d)(2)(E) ............................... 21, 39, 40

Fed.R.Evid. 17(c) ................................. 44, 49, 50, 51

Fed.R.Evid. 402 .............................................. 48

Fed.R.Evid. 404(b) ............................................. 30

Fed.R.Evid. 406 ...................................... 37, 39, 40

Fed.R.Evid. 611(b) ............................................ 48

Fed.R.Evid. 801(d)(2) ......................................... 40

Fed.R.Evid. 801(d)(2)(A) ...................................... 42

Tenn. Sup. Ct. 8, RPC 3.4(e)(1) ............................... 57

Tenn. Sup. Ct. 8, RPC 3.4(e)(2) ............................... 57

Tenn. Sup. Ct. 8, RPC 3.4(e)(3) ............................... 57

Tenn.Sup.Ct.R. 8, RPC 3.7 ..................................... 57

**Constitutional Provisions**

Fifth Amendment ........................................... passim

Sixth Amendment ........................................... passim

**STATEMENT IN SUPPORT OF ORAL ARGUMENT**

Appellant requests oral argument pursuant to Sixth Circuit Rule 34(a) to assist this Court in understanding multiple and complex issues in this case.

**JURISDICTIONAL STATEMENT**

A. Jurisdiction was in the U.S. District Court pursuant to 18 U.S.C. § 3231.

B. This appeal is of right pursuant to Fed.R.App.P. 3 and 4(a); Fed.R.Crim.P. 32(j)(B); and 28 U.S.C. § 1291.

C. Notice of Appeal was timely filed.

D. Appeal is from final judgment that disposes of all party's claims.

## STATEMENT OF THE ISSUES

1.    Is the conspiracy indictment defective?

2.    Is evidence of a single conspiracy sufficient?

3.    Was Vassar erroneously denied a Bill of Particulars and provided an insufficient and misleading partial Bill of Particulars?

4.    Did the District Judge erroneously construe Fed.R.Crim.P. 606 to prohibit questions to the jury necessary to determine whether the agreement found by the jury was a criminal conspiracy?

5.    Was Gunter's statement about Vassar to D.L.Phillips properly admitted under Fed.R.Evid. 801(d)(2)(E)?

6.    Did Fann's self-recorded statement as an agent violate Vassar's Sixth Amendment/*Crawford* confrontation rights?

7.    Was Vassar erroneously denied Fed.R.Crim.P. 16(a)(1)(E)(i) discovery of impeaching records?

8.    Was Vassar erroneously denied Fed.R.Crim.P. 17(c)/Sixth Amendment compulsory process for records to be filed under seal with the Court for *in camera* review pursuant to Due Process requirements of *Pennsylvania v. Ritchie*?

9.    Was Vassar denied *Pennsylvania v. Ritchie* Due Process review of privileged records?

10.  Did improper arguments of the prosecutor deny Vassar a fair trial?

11. Did selective guideline sentencing practices by prosecutors cause Vassar's sentence to be incorrectly calculated?

12. Was Vassar sentenced for the wrong offense of conviction?

13. Was Vassar's sentence procedurally and substantively unreasonable?

# SUMMARY OF ARGUMENTS

1.   Vassar's conspiracy indictment does not meet the mandatory requirements of Fed.R.Crim.P. 7(c)(1) and the Fifth and Sixth Amendments.

2.   Evidence of a single conspiracy was insufficient.

3.   Vassar was erroneously denied a Bill of Particulars and a partial bill of particulars was insufficient and misleading.

4.   The District Judge erroneously construed Fed.R.Crim.P. 606 to prohibit questions to the jury necessary to determine whether the agreement found by the jury constituted a criminal conspiracy.

5.   Gunter's statement about Vassar to D.L.Phillips was incorrectly admitted under Fed.R.Evid. 801(d)(2)(E).

6.   Admission of Fann's self-recorded statement while an agent violated Vassar's Sixth Amendment/*Crawford* confrontation rights.

7.   Vassar was erroneously denied Fed.R.Crim.P. 16(a)(1)(E)(i) discovery of impeaching records.

8.   Vassar was erroneously denied Fed.R.Crim.P. 17(c)/Sixth Amendment compulsory process for records to be filed with the Court under seal for *in camera* review under Due Process requirements of *Pennsylvania v. Ritchie.*

9. Vassar was denied due process *Pennsylvania v. Ritchie* review of privileged records.

10. Improper arguments of the prosecutor denied Vassar a fair trial.

11. Selective guideline sentencing practices by prosecutors caused Vassar's sentence to be incorrectly calculated.

12. Vassar was sentenced for the wrong offense of conviction.

13. Vassar's sentence was procedurally and substantively unreasonable.

## STATEMENT OF THE CASE

Vassar, Thornton, and D.L.Phillips were indicted for a cocaine conspiracy of 5-kilos or more. Gunter was added co-conspirator by superseding indictment. [R.9:Indictment,ROA.60;R.238:SupersedingIndictment,ROA.992]

Vassar had been arrested on 8/10/05 in a separate indictment #2:05-cr-70 for a 4/18/02 possession with intent to distribute; possession of ammunition by convicted felon; and a 6/16/05 cocaine transfer. Severance of Counts in #2:05-cr-70 was granted and Vassar's trials were set sequentially. [R.139:Order,ROA.454].

After a three-day jury trial, Vassar was found not guilty of the 4/18/02 felon-ammunition possession in and the government then dismissed the #2:05-cr-70 4/16/02 possession with intent set for trial 4/4/08.

Trial began in this case on 6/12/06. [R.472:MinuteEntry,ROA.1530; R.474:MinuteEntry,ROA.1531;;R.476:MinuteEntry,ROA.1533;R.479:Min uteEntry,ROA.1534].

On 6/21/06 the jury found Vassar not guilty of being a member of a conspiracy "that the overall scope of the conspiracy involved more than 5 kilograms or more" and not guilty of being a being a member of a conspiracy "that the overall scope of the conspiracy involved 500-grams or more."

[R.594:Instruction,pp.85,91-93,ROA.85,91-
93;R.489:JuryVerdict,ROA.1549]

The jury found Vassar guilty of being a member of a
conspiracy that the "overall scope of the conspiracy involved
less than 500-grams" and guilty of a 6.61-gram distribution to a
Ricky Fann on 6/16/05.
[R.488:MinuteEntry,ROA.1548;R.489:JuryVerdict,ROA.1549]

Gunter was found not guilty of being a member of any
conspiracy and not guilty of the 8/16/05 transaction with
D.L.Phillips.
[R.488:MinuteEntry,ROA.1548;R.489:JuryVerdict,ROA.1549]

Vassar's Fed.R.Crim.P. 33 New Trial and 34 Arrest of
Judgment motions were denied.
[R.523:MotionNewTrial,ROA.1578;R.524:MotionF.R.Crim.P.34,ROA.158
2;R.543:Memorandum,ROA1614;R.545:Response,ROA1627;
R.553:MemorandumOrder,ROA.1640].

Judge Greer denied Vassar's Fed.R.Crim.P 29 motions
for acquittal holding the government's proof established a
"classic chain conspiracy" constituting one single conspiracy.
[R.710:OralRuling,ROA.63]

Complex sentencing proceedings began in August 2006
and continued through February 12, 2007.
[R.575:Order,ROA.1677;R.576:MotionPresentenceConference,ROA.1681
;R:577:MotionforDiscovery,ROA.1689;R.578:MotionforDiscovery,ROA.

1695;R.579:MotionforDiscovery,ROA.1701;R.581:MotionforOrder,ROA.
1710;R.588:SentencingMemorandum,ROA.1751;R.589:Motionfor3553(a)(
4),ROA.1789;R.591:MotiontoConstrue,ROA.1814;R.596:NoticeofFiling
,ROA.1853;R597:SecondDiscovery,ROA.1899;R598:SupResponse,ROA.190
5;R.602:Order,ROA.1925;R.604:SuppAuthorites,ROA.1930;R.605:M&O,R
OA.1932;R.606:MotionReconsideration,ROA.1948;R.608:MotionReconsi
deration,ROA.1977;R.609:SuppResponse,ROA.1981;R.611:Order,ROA.19
84;R:612:Order,ROA.1985;R.620:Order,ROA1995;R.621:SecondMotionCo
mpel,ROA.1996;R.622:MotionSpecificDisclosures,ROA.2021;R.624:Thi
rdMotionDownward,ROA.2031;R.627:MotiontoResetSentencing,ROA.2038
;R.628:MotiontoSeal,R.2043;R.629:MotiontoUnseal,ROA.2045;R.632:N
oticeofFiling,ROA.2061;R.634:MotionforRelief,ROA2082;R.635:Motio
ntoDismiss,ROA.2108;R.642:MotiontoFile,ROA.2143;R.647:MotionAddi
tionalDiscovery,ROA.2176;R.648:Order,ROA.2180;R.649:Order,ROA.21
82,R.651:MotionforDiscovery,ROA.2183;R.653:MotionforLeave,ROA.21
87;R.654:MotionforLeave,ROA.2190;R.655:MotionforLeave,ROA.2195;R
.656:MotionforLeave,ROA.2197;R.663:Order,ROA.2212;R.664:Order,RO
A.2214;R.666:MotionforLeave,ROA.2221;R.667:MotionforLeave,ROA.22
30;R.676:Order,ROA.2393].

At a sentencing hearing on 11/17/06 Judge Greer placed
Vassar's attorney, Moncier, in jail; disqualified Moncier from
representing Vassar; appointed Vassar a different attorney;
continued Vassar's sentencing hearing; and cited Moncier for

criminal contempt of court. [R.682:Hearing,ROA.1-105;R.676:Order,ROA.2393;R.677:Order,ROA.2394]

On 1/29/07 Judge Greer reinstated Moncier and set a sentencing hearing for 2/12/07. [R.693:Order,ROA.2400]

A sentencing hearing was held on 2/12/07. [R.721:SentencingHering,ROA.1-214]

Judge Greer sentenced Vassar to 12 years, and 6 years of supervised release, for 3.5-5-kilos of cocaine with Rice and Fann. [R.721:SentencingHearing,ROA.1-214]

Timely notice of appeal was filed on 2/28/07. [R.729:NoticeAppeal,ROA.2485]

On 5/28/07 Judge Greer convicted Moncier of criminal contempt of court.[1]

---

[1]     *See U.S. v. Moncier*, Sixth Circuit #07-6053.

## 1.  Stacy Phillips

S.Phillips testified he had cocaine dealings with Thornton in 1996, 1999 and in 2003 and his main customers in 2003 were a Chris Shults, Vassar, and Thornton. [R.710:S.Phillips,ROA.26-28]

## 2.  Dewey Lynn Phillips

D.L.Phillips had known Vassar for many years through fooling with, and hauling, cars. [R.710:D.L.Phillips,ROA.166] Beginning in 2004 D.L.Phillips was getting kilos of cocaine from Bautista and selling them to Thornton, Shults, Keith Hicks, and Vassar. D.L.Phillips was selling to Vassar maybe one key a month for 24-25,000 and he was paying 20-22,000. [R.710:D.L.Phillips,ROA.167-168]

D.L.Phillips approximated he provided Vassar 1 kilo a month between January and July 2005 but there was an empty space of "about 3 months" when he couldn't get any. [R.710:D.L.Phillips,ROA.172] On re-direct examination, D.L.Phillips said he sold Vassar 17 to 20 kilos. [R.689:D.L.Phillips,ROA.185]

---

[2]  A detailed chronological index of witness's testimony is contained in Appendix 1.

### 3. Patsy Phillips

P.Phillips offered no evidence tying Vassar to cocaine or a cocaine conspiracy.

### 4. Misty Thomas

In 2003 Thomas was at Alice's Restaurant in Newport that was operated by Chris Shults. [R.689: Thomas,ROA.239-240] Thomas said she saw Vassar hand "something" to a girl in the bar but no money exchanged hands. Thomas said this happened only once. [R.689:Thomas,ROA.242-243] Thomas admitted she didn't know what the substance was but could tell what it looked like. [R.689:Thomas,ROA.244-245] Vassar gave "a little bit of white powder" to a girl at a bar. [R.689:Thomas,ROA.254]

### 5. James Mark Thornton

Thornton had known Vassar for 25 years. R.689:Thornton,ROA.258]

Thornton was released from a boot camp for cocaine offenses in April 2003 and went to work for Affordable Auto Glass owned by Vassar; Bo Murrell, Roger Gunter and Margaret Vassar worked there; Margaret Vassar supervised the business; and in February 2004 the business was taken over by Thornton's brother Scotty Thornton. [R.689:Thornton,ROA.260-263]

*Cross*

Vassar was not distributing cocaine and Thornton was not part of any agreement with Vassar to distribute cocaine. [R.712:Thornton,ROA.15-16] Thornton got cocaine from C.Shults who had been dealing cocaine since 1996 and traveling back and forth from Mexico on a regular basis. [R.712:Thornton,ROA.16-19]

In 2003-2004 Thornton became concerned Vassar was heavily addicted to drugs and he went to Vassar's mother to get Vassar help. [R.712:Thornton,ROA.35-36]

Alice's Bar was a place where people went to party with cocaine and everybody in there had a lot of cocaine to use. [R.712:Thornton,ROA.37]

## 6. Daniel Tate Rice

Rice did not connect anything Rice alleged Vassar did with Rice to the named co-conspirators D.L.Phillips, Thornton, or Gunter, or to unnamed co-conspirator C.Shults.

Rice partied with Vassar and started getting cocaine, probably an ounce every couple of days. Rice would meet Vassar mostly at "Marcella's house"; the largest amount he ever saw Vassar with was "a couple of ounces maybe"; and this continued until "about January of '05". [R.712:Thornton,ROA.44-45,50-51]

Rice used most of what he bought from Vassar but sold some to support his habit. [id.,ROA.51,J.A.*]

*Cross*

12

Rice agreed that to get a deal with prosecutors you agree to things that are not true. [R.712:Rice,ROA.94] Rice claimed state detective McCoig had him write something that wasn't true in his statement. [R.712:Rice,ROA.105-106]

Rice said police officers coax people into saying things that they don't want to say and he gave McCoig a false statement just because the officer told him to. [R.712:Rice,ROA.107-108]

## 7.   Jim Williams

Williams is a TBI Agent. [R.712:Williams,ROA.123] Williams gave Ricky Fann $900.00 to buy controlled substances from Vassar; Williams brought back a plastic bag with white powder and $647; the cocaine cost $253. [R.712:Williams,ROA.128-131]

Williams acknowledged during his cocaine investigation in this case, only a 7-gram buy was made from Vassar. [R.712:Williams,ROA.188-189]

## 8.   Ricky Lynn Fann

Fann was a paid contract operative with the TBI, code name "Charlie."

Fann did not connect anything Fann claims to have done with Vassar to S.Phillips, D.L.Phillips, Thornton or C.Shults. Fann met Vassar in early 2005. [R.610:Fann,ROA. p.2]

Fann purchased drugs from Vassar at his home, camper and garage. [R.610:Fann,ROA.2-3] Fann testified he got cocaine from Vassar "every day or two or three times a day"; the largest amount he saw Vassar with was "maybe a half a key, quarter key" at Vassar's house; and Fann had a 6.61-gram transaction on 6/16/05 at Vassar's garage. [R.610:Fann,ROA.45]

### 9. TBI Lab David Holloway

The substance submitted to him weighed 6.61-grams and contained cocaine hydrochloride. [R.786:Holloway,ROA.24,30]

### 10. FBI Agent Kevin Keithley

FBI Agent Keithley acknowledged he believed Vassar had a drug problem. [R.786:Keithley,ROA.84]

### 11. Michael Dale Deas

Deas, who is paralyzed, had been addicted to cocaine; and used marijuana and crack. [R.786:Deas,ROA.138] Fann told Deas he had gotten into some trouble and that the law was forcing him to lie on Vassar and they would charge Fann's wife if he didn't. [R.786:Deas,ROA.161-165]

### 12. Amber Hall

Hall dated Rice. [R.786:Hall,ROA.186-187]. Rice was addicted to crack. [R.786:Hall,ROA.188] Rice is a very untruthful person and she cannot believe anything Rice says. [R.786:Hall,ROA.188-189]

Hall knew Vassar and never knew Vassar to provide Rice any type of drug. [R.786:Hall,ROA.190]

**ARGUMENT**

I.       **Vassar's Conspiracy Indictment Is Insufficient.**

Sufficiency of an indictment is reviewed *de novo*. *U.S. v. Gatewood,* 173 F.3d 983, 986 (C.A.6,1999).

Vassar's indictment charged a cocaine conspiracy that could have occurred anytime, anywhere, and with anybody; that did not charge the agreement was "unlawful"; and that did not charge Vassar "knowingly or intentionally" intended to commit a drug transaction.

> From on or before January 1, 2004 **[anytime]** to on or about August 24, 2005, within the Eastern District of Tennessee and elsewhere, **[anywhere]** DEWEY LYNN PHILLIPS, JAMES MARK THORNTON, MICHAEL CARL VASSAR, MICHAEL GUNTER, and others known and unknown **[anybody]**, did **[unlawfully?]** conspire, confederate and agree with each other and others both known and unknown **[anybody]** to distribute and to possess with intent to distribute **[unlawfully?]** **[knowingly or intentionally?]** five (5) kilograms or more of [cocaine] ...

*Fifth Amendment Grand Jury Compliance*

*Russell v. U.S.,* 369 U.S. 749, 769-770 (1962) held the grand jury clause of the Fifth Amendment required that an indictment state each element of the crime charged to assure the grand jury makes a determination on each element of the offense charged and to prevent the prosecutor, or the court, from later guessing what was in the mind of the grand jury and to prevent the defendant from being convicted of a crime not considered by

the grand jury. *See U.S. v. Cabrera-Teran*, 168 F.3d 141, 143 (C.A.5,1999).

Fed.R.Crim.P. 7(c)(1) makes mandatory that indictments contain:

(1) the essential "elements" of the offense;

(2) a "definite written statement of the essential facts constitution the offense charged"; and

(3) a citation to the statute.

Fifth and Sixth Amendment constitutional requirements are the indictment must (1) "contain[s] the elements of the offense intended to be charged"; (2) "sufficiently apprises the defendant of what he must be prepared to meet" and, (3) "in case any other proceedings...for a similar offense whether the record shows with accuracy to what extent he may plead a former acquittal or conviction." The indictment must do more than "simply repeat the language of the criminal statute. ... [i]t must state the species, it must descent to particulars" ... "and be accompanied with a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." *Russell v. U.S.*, 369 U.S. 749, 764-765 (1962); *Hamling v. U.S.*, 418 U.S. 87, 117-118 (1974).

### Elements Of A Drug Conspiracy

Vassar's jury was instructed that Vassar pled not guilty to being in a conspiracy offense that had as an essential

elements three separate objects, i.e., "the overall scope of the conspiracy involved 5 kilograms or more of cocaine"; "the overall scope of the conspiracy involved over 500 grams but less than 5 kilograms"; and "the overall scope of the conspiracy involved less than 500 grams." [R.794:Instruction, ROA.84-85,91-92].

The jury was instructed that the second essential element of each of the three conspiracies included in Count 1 was that Vassar "knew of the unlawful purpose of the agreement." [R.794:Instruction,ROA.85,91-92]

This essential element was not charged in Vassar's indictment.

Some drug agreements, such as with Fann as a government agent, or Fann and Rice as casual exchanges among addicts or buyer-sellers, do not constitute an unlawful §846 conspiracy. These types of agreements would, however, be included in the language of the indictment. Vassar's jury was not instructed they could not consider these types of agreements as an §846 conspiracy. *U.S. v. Pennell*, 737 F.2d 521, 536 (C.A.6,1984)(agreement with agent) *and U.S. v. Larson*, 1997 WL 535780 (C.A.6,1997)(agreement between buyer-seller)

The jury was instructed that the third essential element of each of the three conspiracies included in Count 1 was that Vassar "joined in the agreement willfully, that is with

the intent to further its unlawful purpose."
[R.794:Instruction,ROA.85,91-92]

Again, these essential elements are not contained in Vassar's indictment. Nor are these essential elements contained in §846 or §841 cited in Vassar's indictment.

In *U.S. V. Pupo,* 841 F.2d 1235, 1239 (C.A.4,1988) the Court held failure to charge "knowingly or intentionally" rendered a drug indictment defective.

*In U.S. v. Kueke*, -- F.3d -- (C.A.6,2008), in an 18 U.S.C. § 924(c) possession of a weapon during and in relation to a drug offense, this court held the elements of the underlying drug offense must be established even if the drug offense was not charged separately.

Vassar acknowledges *U.S. V. Martinez*, 981 F.2d 867, 872 (C.A.6,1992). *Martinez* cited an aiding and abetting statute that contained the element not charged in the indictment. Vassar's indictment cites §846 and §841 neither of which contains the elements omitted from Vassar's indictment that were charged to the jury.

In *Hagner v. U.S.*, 285 U.S. 427, 432 (1932) the Court held the intent necessary could be "implied" from the allegations of the indictment. Nothing in Vassar's indictment implies that Vassar and another "unlawfully" agreed or that

Vassar did so to knowingly and intentionally to commit a drug offense.

This Court in an unpublished opinion in *U.S. v. Mustafa,* 173 F.3d 430 (Table) 1999 WL 96473*3 (C.A.6,1999) reviewed an indictment which did not charge the mental state and held that indictment did not "include the specific elements of the conspiracy charge." The Court, however, declined to reverse because no objection was made at trial and under plain error review Mustafa did not establish prejudice.

Deficiencies in Vassar's indictment resulted in prejudice to Vassar.

(1) There cannot be a meaningful determination that a grand jury performed its Fifth Amendment obligation where the indictment does not charge the essential elements or the essential facts of the conspiracy.

(2) Because the indictment failed to charge the agreement was unlawful, Vassar was most likely convicted of a conspiracy with a government agent, Fann, for the 6.61-gram 6/16/05 agreement which could not be a §846 violation; or Vassar may have been convicted of conspiracy for mere buyer-seller transactions with Fann and Rice that would not be an §846 conspiracy. *See U.S. v. Larson*, 1997 WL 535780 (C.A.6,1997); *U.S. v. Pennell*, 737 F.2d 521, 536 (C.A.6,1984)

(3) Vassar did not have notice or a meaningful opportunity to prepare a defense against alleged conspiracies with Fann or Rice where Vassar was not charged in the indictment with those conspiracies and only advised of those conspiracies within days of trial or during trial. *See U.S. v. Garner,* 507 F.3d 399, 408 (6th.Cir.,2007)

(4) Vassar cannot plead jeopardy from the indictment, or the jury verdict, in another cocaine conspiracy that may be alleged to have occurred sometime, somewhere or with someone.

(5) Where the beginning date of the conspiracy included "anytime" the jury could not comply with its instruction to find Vassar's conspiracy existed "within a specified period" and that Vassar was a member within the time charged. [R.794:Instruction,ROA.79-80]

(6) Without time, names of members and/or places, Vassar did not know what evidence, acts, people, or Fed.R.Evid. 802(d)(2)(E) statements Vassar needed to prepare for in his defense; Vassar had no notice of potential *U.S. v. Pinkerton*, 328 U.S. 640 (1946) liability for acts of co-conspirators committed when Vassar was a member of the conspiracy; the Trial Judge could not determine whether to admit acts as being committed in furtherance of the conspiracy; the Trial Judge could not determine whether to admit only acts that Vassar "knowingly or intentionally" agreed to participate in; and the Trial Judge could not determine whether a co-conspirator statement was made in furtherance of a conspiracy at a time in which Vassar was a member to be admissible under Fed.R.Evid. 801(d)(2)(E). *see U.S. v. Enright*, 579 F.2d 980 (1978); *U.S. v. Vinson*, 606 F.2d 149 (1979).

Vassar repeatedly challenged the sufficiency of the conspiracy indictment by multiple pretrial motions, appeals and

post-verdict Fed.R.Crim.P. 34 arrest of judgment.[3] [R.111:MotionDismiss,ROA315;R.170:Appeal,ROA659; R.123:R&R.ROA.352]

Vassar cited *U.S. v. Cecil*, 608 F. 2d 1294 (C.A.9,1979) that an open-ended conspiracy date is insufficient. On 2/8/06 Judge Greer rejected *Cecil* because the *Cecil* conspiracy was open on both ends. [R.124:Order,ROA.355] This distinction is without meaning where the beginning open-end in Vassar's conspiracy included Vassar's entire life.

Instead of dismissing the indictment, on 2/8/06 Judge Greer, without objection from the Government, relying on *U.S. v. Mitchell*, 765 F. 2d 130 (C.A.10,1985) modified the indictment to construe "on or before" to mean "on or about" 1/1/04. [R.227:M&O,ROA.955]

After trial began Judge Greer reversed his 2/8/06 modification and relied on an unreported opinion in *U.S. v. Simmons*, 142 F.3d 441 (Table, 1998 WL 231103 (7th.Cir.1998) to hold dates of a conspiracy are not "elements." In footnote 1, *Simmons* made clear the issue in that case was admissibility of evidence, not sufficiency of the indictment.

Vassar's defective conspiracy indictment resulted in a non-specific conspiracy charge that allowed the prosecutor to

---

[3] Detailed citations to the record are contained in Appendix 1.

shift the essential facts of the conspiracy and the jury to convict for uncharged agreements with Fann or Rice after the conspiracy among named co-conspirators D.L.Phillips, Thornton and Gunter, failed.

Vassar requests this Court arrest Vassar's conspiracy conviction; dismiss the conspiracy count; and because of prejudicial spillover remand Count-3 for a new trial.

## II.    Insufficient Evidence Of A Single Charged Conspiracy.

Appellate Courts review "a [sufficiency of evidence] challenge *de novo*, ... but view the evidence in the light most favorable to the prosecution." *U.S. v. Owen*s, 426 F.3d 800, 808 (C.A.6,2005).

Review is *de novo* whether there was a constructive amendment or a variance to the indictment. *U.S. v. Swafford*, 512 S.W.2d 833 (C.A.6,2008)

"A variance to the indictment occurs when the charging terms of the indictment are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment." *U.S. v. Caver*, 470 F.3d 220, 235-237 (C.A.6,2006).

There was both insufficient evidence of the charged "Phillips conspiracy" and insufficient evidence of a single conspiracy.

Because the indictment did not include the essential facts of the conspiracy and there was no BOP, AUSA Smith's statements of the "essential facts" at trial constitute the only definition of the essential facts of the conspiracy.

AUSA Smith described the conspiracy to be a single conspiracy where Stacy and D.L. Phillips provided Vassar over 5-kilos of cocaine that Vassar was selling to others, i.e., the "Phillips conspiracy." [R.793:SmithOpening,ROA.165-168;R.794:Argument,ROA.6-8,15,59]

The jury was instructed that Count 1 included three conspiracy objects, i.e., an "overall scope that involved... over 5-kilograms of cocaine"; an "overall scope that involved... over 500-grams but less than 5-kilograms of cocaine"; and an "overall scope that involved...less than 500-grams of cocaine" and that Vassar plead not guilty to each. The jury was instructed each of the three overall scope objects were an essential element of each conspiracy offense included in Count-1. [R.794:Instruction,ROA.83-84,90-92]

The only evidence at trial connecting Vassar to cocaine, other than the Phillips, was Fann and Rice.[4] Vassar, however, was found not guilty of being a part of any conspiracy

---

[4] Misty Thomas testified sometime in 2003 or 2004 she saw Vassar hand a small amount of white powder to a lady in a bar but no money changed hands.

that had an "overall scope that involved 500-grams or more." This acquittal rejected the "Phillips conspiracy."

For the evidence to be sufficient to support the third conspiracy offense that had the object-element of an "overall scope to include 500-grams or less," that conspiracy must be a part of the "Phillips conspiracy" described by AUSA Smith. If the jury conspiracy verdict was not part of AUSA Smith's "Phillips conspiracy" then the jury verdict constitutes an impermissible constructive amendment to, and variance from, the conspiracy defined by AUSA Smith. *U.S. v. Swafford*, 512 F.3d 833, 841 (C.A.6,2008)

The jury demonstrated its concern about the conspiracy charge regarding the number of persons required; weight; and for a re-definition of conspiracy its questions during deliberations. [R.794:JuryQuestions,ROA.102-105]

For AUSA Smith's essential facts to be sufficient for the conspiracy offense Vassar was convicted, it was also necessary that the cocaine Fann and Rice claimed to obtain from Vassar was provided Vassar by the Phillips.

There was not a scintilla of evidence connecting cocaine Fann or Rice claimed to obtain from Vassar to cocaine AUSA Smith charged was supplied by the Phillips or that the Phillips were in a conspiracy with Vassar that had as its overall scope less than 500-grams of cocaine.

The most likely person the jury considered to be a co-conspirator of Vassar was Fann because (1) Vassar acknowledged the 6/16/05 6.61-gram transfer to Fann and (2) the jury convicted Vassar of the 6/16/05 6.61-gram Fann transfer in Count-3.

Fann's role in the 6/16/05 transfer was that of a government agent. A government agent, however, cannot share the specific criminal intent necessary as a Fed.R.Crim.P. 7(c)(1) "element" for a conspiracy. Therefore, an agreement with Fann for the 6/16/05 transfer cannot be an unlawful conspiracy and was insufficient. *see U.S. v. Pennell*, 737 F.2d 521, 536 (C.A.6,1984); *U.S. v. Williams*, 274 F.3d 1079, 1084 (C.A.6,2001).

Fann and Rice both testified their alleged transactions with Vassar were either for their personal use or to sell to support their personal habit. Although Fann denied using some of the 6.61-6/16/06 cocaine with Vassar, the physical evidence rule, when applied to the 6/16/06 tape recording [R.610:Transcript,ROA.168;Exhibit 37] establishes he did. *See U.S. v. Narciso*, 446 F.Supp. 252, 282-283 (D.C.,Mich.,1977); *Wood v. U.S.*, 342 F.2d 708 (C.A.8,1965)

A buyer-seller relationship is insufficient to support a conspiracy verdict.[5]   *See U.S. v. Larson*, 1997 WL535780 (C.A.6,1997); *U.S. v. Thomas*, 150 F.3d 743 (C.A.7,1998).

The evidence is also insufficient to establish a single conspiracy where (1) Judge Greer incorrect held the proof showed a "classic chain conspiracy"; (2) Judge Greer's findings are contrary to evidence and verdict that established multiple conspiracies; and (3) there is insufficient evidence of a single conspiracy.

A single conspiracy is essential to the sufficiency of Vassar's conspiracy conviction. See *Kotteakos v. U.S.*, 328 U.S. 750, 768-769 (1946); *U.S. v. Ghazaleh*, 58 F.3d 240, 245 (C.A.6,1995); U.S. v. Warner, 690 F.2d 545, 548-549 (C.A.6,1982).

A "chain conspiracy" is a single conspiracy where operators, at different levels, are connected by a common scheme or enterprise. *see U.S. v. Swafford*, 512 F.3d 833, 842, fn 3,(C.A.6,2008). The connections are sometimes called "links" in the chain.

A correct example of a "chain conspiracy" was the 2003 conspiracy described by Thornton and S.Phillips where Bautista

_____

[5]   Vassar requested a buyer-seller instruction; the Court stated it would include the instruction; the court omitted the instruction; and refused to correct its omission. [R.421:ProposedJuryInst,ROA.1388]

sold to S.Phillips who then sold to Shults who then sold to Thornton. Thornton became a "link" in the chain of those agreements, and a member of that conspiracy, although Thornton's agreement was with Shults and Thornton had no agreement with Bautista or S.Phillips.

A wheel conspiracy is where there is a hub that has various spokes, or chains, of distribution to others. A rim must connect the spokes or chains to constitute a single conspiracy.

In Vassar's case the prosecution joined a 2003 Batista>S.Shults>Thornton chain to a 2004 Batista>D.L.Phillips>Vassar chain, and then both to an alleged Batista>D.L.Phillips>Gunter 8/16/05 chain. There is no "link" or "rim" around the 2003, 2004 or 2005 alleged separate chain conspiracies.

The allegation that Vassar may have been a common member of the 2003, 2004 or 2005 conspiracies is immaterial. In *Kotteakos*, the Court prohibited the government "string[ing] together, for common trial, ... separate and distinct crimes, conspiracies related in kind though they might be, when the only nexus among them lies in the fact that one man participated in all." *Kotteakos*, 328 U.S. at 773.

What *Kotteakos* prohibited was exactly what the government did in Vassar's case, i.e. string together separate

and distinct cocaine conspiracies in 2003, 2004 and 2005 because Vassar was alleged to be a member of each.

Vassar requests this Court reverse and dismiss the conspiracy count.

### III. Erroneous Denial Of Bill Of Particulars.

This Court reviews a district court's denial of a bill of particulars for "abuse of discretion." *U.S. v. Crayton*, 357 F.3d 560, 568 (C.A.6 2004).

"[A]n abuse of discretion occurs when (1) the district court's decision is based on an erroneous conclusion of law, (2) the district court's findings are clearly erroneous, or (3) the district court's decision is clearly unreasonable, arbitrary or fanciful", *Toth v. Grand Trunk R.R.*, 306 F.3d 335, 343 (C.A.6,2002); "where a court... improperly applies the law or uses an erroneous legal standard", *U.S. v. Nixon Fleischut v. Detroit Diesel, Inc.,* 859 F.2d 26, 30 (C.A.6,1988); or "when [the appellate court is] firmly convinced that the trial court committed a clear error of judgment." *U.S. v. Heavrin*, 330 F.3d 723, 727 (C.A.6,2003).

Sufficiency of the partial BOP provided Vassar must be made post-trial and should be a mixed question of law and fact,

which this Court reviews *de novo*.  *See Maples v. Stegall*, 340 F.3d 433, 436 (C.A.6,2003).[6]

Beginning on 10/21/05 and repeatedly thereafter Vassar moved for a Fed.R.Crim.P. 7(f) BOP and pretrial notice of Fed.R.Evid. 404(b) evidence.  [R.44:BillParticulars,pp.3-4,¶¶1-5,ROA.118].[7]

The government is strictly limited to a bill of particulars and any prejudicial variance from the particulars is grounds for reversal.  *U.S. v. Haskins*, 345 F.2d 111, 114 (C.A.6,1965).

*Haskins* states the traditional purposes of a BOP.

As an issue of first impression, Vassar asserts an additional purpose of a BOP is to provide Vassar notice of *U.S. v. Swiney and* §1B1.2(d), Note 4, conspiracy sentencing liability objects he was required to defend against and §1B1.3(B) evidence of potential relevant conduct.

The reason given to deny Vassar's requested particulars was that decision is discretionary. [R.124:Order,ROA.369-371;R.173:Order,ROA.665]

---

[6]    A discussion of the need for post-trial sufficiency review of BOPs *see State v. Byrd*, 820 S.W.2d 739, 741 (Tenn.,1991).

[7]    Detailed citations to the records pertaining to this issue are included in Appendix II.

Respectfully, denying a BOP solely because the court has discretion is arbitrary. This rationale, if accepted by this Court, would permit magistrate-judges throughout the country to apply their personal predilections, without any rational basis, to deny BOPs.

Except the 6/16/05 undercover recording Vassar had no Fed.R.Crim.R. 16(a) discovery,; no Fed.R.Crim.P. 7(c)(1) indictment "ways and means"; and the substantive counts charged were on 4/17/05, 6/16/05 and 8/24/05 and of no help, if not misleading, to Vassar being a member of the conspiracy prior to 2005.

Reasons must be limited to findings Vassar did not need the requested BOPs for one of the purposes recognized in *U.S. v. Haskins*. Any other reason, including exercise of discretion without reason, applies an incorrect standard.

In anytime-anybody-anywhere, or statute-referenced drug conspiracy indictments, in the event this Court does not dismiss Vassar's conspiracy indictment as being insufficient, Vassar urges this Court adopt a rule requiring the Government, on a defendant's request, file a BOP.

In *U.S. v. Garner*, 507 F.3d 399, 408 (C.A.6, 2007) this Court held the government is required to make *Brady* disclosures in sufficient time for the defense (1) to

investigate the disclosure, (2) to determine the value of the disclosure to the defense, and (3) thereafter present a defense.

The same is true of notice of essential facts by an indictment or BOP in sufficient time to conduct a meaningful investigation. Vassar did not obtain any particulars until AUSA Smith's opening statement at trial.

AUSA Smith told the jury that Vassar's suppliers were S.Phillips and D.L.Phillips [R.793:SmithOpening,ROA.165-168]; the jury would hear "from both [Vassar's] suppliers and the people he was selling to" [Id.165-168]; "that this is a single conspiracy. First S.Phillips was Vassar's supplier of 5 kilograms and then D.L.Phillips supplied Vassar 20 kilograms" [R.794:Argument,ROA.6-8]; the cocaine Vassar was getting from S.Phillips and D.L.Phillips was being sold to Rice and Fann [Id.8]; and concluded "the proof shows you beyond a reasonable doubt that Mike Vassar is guilty of conspiring with D.L.Phillips and S.Phillips to possess and to distribute over 5 kilograms of cocaine." [Id.15]

The indictment charging D.L.Phillips, Thornton or Gunter is sufficiently defined to protect Vassar from double jeopardy. Conspiracies with others, during Vassar's lifetime, or at lease since 4/18/02, are not defined by the indictment, BOP or jury's verdict.

It is impossible from the indictment for Vassar to plead former jeopardy if charged again somewhere in a wheel or chain conspiracy with an unnamed co-conspirator or an unnamed jurisdiction that was not identified in Vassar's case by BOP, jury charge or verdict.

It is impossible from the indictment or instruction, after the verdict of not guilty of a conspiracy with "an overall scope involving 500 grams or more", to determine what evidence jeopardy bars the government from introducing at a retrial.

For example, can the government offer testimony at retrial of S.Phillips and D.L.Phillips, Rice, Fann or can the government include some new person not or act not mentioned in Vassar's first trial?

This Court has not previously address ed how to review sufficiency of a BOP. Vassar requests this Court analyze the BOPs' sufficiency against evidence that was disclosed during the trial.

AUSA Smith on 1/13/06 stated in a BOP that "on or before January 1, 2004" ... "simply reflects that the exact date the conspiracy arose was unknown to the government and the grand jury although the conspiracy was clearly in existence since on or about January 2004." [R.137:Response,ROA.450]

Six months later, relying on the testimony of S.Phillips AUSA Smith, on Friday, 6/9/06 wrote "the conspiracy started at the "beginning of 2003."[8] [R.457:Motion,p.4,ROA.1484] D.L.Phillips and S.Phillips had been cooperating since late August 2005. AUSA Smith knew in August 2005 what he knew during his opening statement at trial.

AUSA Smith's 1/13/06 BOP statement, reviewed in the context of AUSA Smith's evidence at trial, established his BOP statement was not only insufficient, but that statement can reasonably be construed to have been deliberately false to mislead the defense.

Vassar had every reason to believe, from AUSA Smith's statement, that the government did not have a witness or evidence of the conspiracy existing at a date before 1/1/04.

AUSA Smith could have filed a Fed.R.Crim.P. 7(b) amendment or (c) BOP narrowing the conspiracy to "on or about January 1, 2004." [R.222:M&O,J.A.*]

The government acquiesced to Judge Greer, on 2/8/06, relying on *U.S. v. Mitchell*, 765 F. 2d 130 (C.A.10,1985) to hold "on or before January 1, 2004" to mean "on or about January 1, 2004." [R.222:M&O,ROA.912] Judge Greer's modification became Vassar's BOP and modified indictment.

_____

[8]     D.L.Phillips had also been cooperating with the government since August 2005.

The government was strictly limited to the BOPs/modification that the conspiracy began "on or about 1/1/04." Any prejudicial variance from that particular is grounds for reversal. *see U.S. v. Haskins*, 345 F.2d 111, 114 (1965).

Contrary to Judge Greer's 2/8/06 modification, in a "trial brief" filed the second day of trial the government asserted 2003 evidence of S.Phillips was part of the conspiracy charged. According to the government the conspiracy went back to and began after the substantive count in the separate indictment #05-cr-70 on April 18, 2002. [R.468:TrialBrief,ROA.1519]

Judge Greer changed his 2/13/06 ruling that "on or before" meant "on or about" 1/1/04. This new modification to the indictment during trial left the defense scrambling to defend against witnesses offered for pre 1/1/04 conduct.

In his instruction to the jury Judge Greer constructively amended the indictment he previously modified to broaden the conspiracy from "on or about 1/1/04" to "on or before 1/1/04" in violation of Fed.R.Crim.P. 7(e) [R.794:Instruction,ROA.84].

The jury instruction created additional problems.

Judge Greer charged the jury that the conspiracy began "on or before" 1/1/04"; the conspiracy occurred "within a specific time period"; and the Government only had to prove the conspiracy occurred "reasonably close to those dates." [R.794:Instruction,ROA.79-80,84]

The problem first facing Vassar in preparing his defense, and then facing the jury, was what were those specific dates?

Ironically, because Vassar was acquitted of being in a conspiracy with named co-conspirators D.L.Phillips, Thornton and Gunter with an overall scope involving 5-kilos or more, Vassar knew less after the jury verdict than Vassar knew from his indictment.

Vassar requests this Court reverse and dismiss the conspiracy conviction because the denial of particulars and the Government's 1/13/06 misleading BOP denied Vassar a fair trial and make it impossible on remand, or new indictment, to determine what evidence is barred by former jeopardy under the jury's verdict.

In the alternative, Vassar requests this Court remand for a new trial with instructions that the government file answers to Vassar's BOPs that do not include co-conspirators, acts or times for which Vassar was acquitted by the jury.

### IV.  Erroneous Application of Fed.R.Evid. 406 To Prohibit A Determination Whether The Jury's Verdict Was An Unlawful Conspiracy.

This Court reviews for abuse of discretion a district court's decision whether to submit special interrogatories to the jury, *Bills v. Aseltine*, 52 F.3d 596, 605 (C.A.6,1995), and reviews *de novo* conclusions of law that underpin such rulings because "it is an abuse of discretion to make errors of law." *United States v. Ganier*, 468 F.3d 920, 925 (C.A.6,2006).

Vassar requested first by BOP and then by jury instructions for the names of persons the jury could consider as Vassar's co-conspirator were denied. [R.418:Motion,ROA.1379]

After Vassar's convictions Vassar moved the Court question the jury foreman as to whether the basis of the conspiracy verdict was the Fann 6/16/05 transaction. [R.485:Motion,ROA.1537

An anonymous letter was received from a juror after trial that suggested Vassar's conspiracy conviction was based on the 6/16/05 6.61-gram Fann transaction. Vassar moved the Court call the jury in to inquire about the anonymous letter and renewed his motion to question jurors whether the Fann 6/16/05 transaction was the basis of the conspiracy conviction in Count-1.

[R.527:Motion,ROA.1588;R.529:Motion,ROA.1591;R.533:ResponseROA.1 601;R.546:SupplementalMotion,ROA.1633]

Judge Greer held Fed.R.Evid. 606(b) prohibited him from granting Vassar's motions to question the jury. [R.522:Order,ROA.1573;R.560:M&O,ROA.1646]

A government agent cannot share the unlawful criminal intent that is an essential element of a conspiracy. *U.S. v. Pennell,* 737 F.2d 521, 536 (C.A.6,1984).

The jury was not instructed, and did not know, an agreement between Vassar and Fann on 6/16/06 could not constitute an unlawful conspiracy. Vassar is serving 12 years for an agreement that is not a crime if the jury used the agreement for the 6/16/05 Fann transaction as the basis for its conspiracy verdict.

A rule of evidence cannot trump Vassar's constitutional right to a complete defense. *See Holmes v. South Carolina*, 547 U.S. 319 (2006). Judge Greer relied exclusively on his construction of Fed.R.Evid. 606 to refuse to question the jury whether the agreement found by the jury was with Fann for the 6/16/05 transaction that would not be a crime under *Pennell*.

Respectfully, Judge Greer incorrectly applied Fed.R.Evid. 606.

Vassar's request for Judge Greer to question the jury did not seek prohibited Fed.R.Evid. 606(b) impeachment of the validity of the jury's verdict. Instead, the inquiry was

necessary to determine whether the agreement validly found by the jury constituted an unlawful conspiracy.

Vassar's motion did not seek Fed.R.Evid. 606(b) juror thought process in finding an agreement. The motion only sought to determine whether the jury's finding of an agreement constituted an unlawful conspiracy.

### Requested Relief

Vassar requests this Court remand his case for the jury to be questioned whether basis for its conspiracy verdict was the 6.61-gram-Fann transaction or, in the alternative, that his conspiracy verdict be reversed and a new trial ordered.

### V. Fed.R.Evid 801(d)(2)(E) Violation By Admission Of Gunter's Statement To D.L.Phillips About Vassar.

Factual determinations concerning the existence of a conspiracy are reviewed under a clearly erroneous standard, while admission of the statements as "not hearsay" under Fed.R.Evid. 801(d)(2)(E) based on such factual findings presents a question of law reviewed *de novo*. *U.S. v. Gessa*, 971 F.2d 1257, 1261 (C.A.6,1992)(en banc).

On 6/2/06 AUSA Smith filed a notice of intent to offer Fed.R.Crim.P. 801(d)(2)(E) statements allegedly made by Gunter about Vassar to D.L.Phillips on 8/16/06. [R.406:Notice,ROA.1330] Vassar filed objections.

On 6/6/07 Judge Greer held AUSA Smith's notice was insufficient. [R.792:Hearing,ROA.1-88]

On 6/9/06 AUSA Smith filed a supplemental Fed.R.Evid. 801(d)(2)(E) proffer that D.L.Phillips would testify that on 8/16/07 Gunter made statements to D.L.Phillips that "Vassar said you might can help me"; "I can't get anymore from Mike Vassar"; "Is it the same price you were selling Vassar?" and "Gunter was purchasing cocaine from Vassar for $25,000." [R.452:Proffer,ROA.1469].

Vassar objections to exclude those statements were denied and Vassar's renewed motion for severance from Gunter because Gunter's statement attributed past criminal conduct to Vassar were denied. [R.407:Motion,ROA.1332;R.406:Motion,ROA.1330; R.710:Argument,ROA.pp.150-158;R.710:Hearing,ROA.p.309; R.792:OralMotion,ROA.pp.53]

Fed.R.Evid. 801(d)(2)(E) required the Government establish at the time of the statement (1) Vassar was a member of a D.L.Phillips-Gunter conspiracy and (2) the statement was in furtherance of that conspiracy.

The following language was added to Fed.R.Evid. 801(d)(2) in 1997 to respond to an issue reserved in *Bourjaily v. U.S.* 483 U.S. 171, (1987):

> the contents of [Gunter's] statement are not alone sufficient to establish...the existence of the conspiracy and the participation therein of [Gunter] and [Vassar] against whom the statement is offered under subdivision (E).

40

Other than Gunter's alleged statement to D.L.Phillips on 8/16/06, there was not a scintilla of evidence that a conspiracy existed between Vassar and Gunter. The 1997 amendment to Fed.R.Evid. 801(d)(2)(E) made Gunter's statement insufficient to establish a Gunter-Vassar conspiracy, or the participation of Gunter or Vassar in that conspiracy.

Even if Gunter's statement could be used under the limitation of Fed.R.Evid. 801(d)(2), telling someone where they may be able to buy drugs, such as "Vassar said I might be able to get some from you" is insufficient to establish a conspiracy.

Judge Greer probably was mislead by AUSA Smith's proffer that D.L.Phillips would testify Gunter said "I can't get anymore from Mike Vassar" in combination with Gunter saying "Vassar said I might be able to get some from you." [R.710:D.L.Phillips,ROA.pp.145-146;R.710:D.L.Phillips,ROA.pp.173-174]

D.L.Phillips, however, did not testify in either his out-of-jury, or before-the-jury testimony, that Gunter said "I can't get anymore from Mike Vassar."

Vassar acknowledges cases relied by Judge Greer that hold a conspirator going to jail does not by itself constitute a withdrawal from the conspiracy.

Vassar going to jail, however, was not the issue.

D.L.Phillips testified that before Gunter approached D.L.Phillips his conspiracy with Vassar was over; Vassar was out of it; Vassar told D.L.Phillips "not to do anything"; and that what D.L.Phillips did with Gunter had nothing to do with Vassar. [R.452:D.L.Phillips,ROA.pp.147-149]

It was D.L.Phillips' testimony, not Vassar going to jail, that defeated Vassar being a member of an alleged conspiracy with D.L.Phillips at the time of Gunter's alleged statements. [R.710:Argument,ROA.pp.150-163]

At best, Gunter's statement about Vassar was a Fed.R.Evid. 801(d)(2)(A) admission of Gunter of prior crimes committed with Vassar. Vassar's motions for severance under Fed.R.Crim.P. 14 and *Bruton v. U.S.,* 391 U.S. 123 (1968) were erroneously denied. [R.408:MotiontoSever,ROA.1337]

Vassar requests this Court reverse his convictions and remand for a new trial with instructions that Gunter's statements to D.L.Phillips be excluded.

**VI.    Sixth Amendment/Crawford Violation By Admitting Fann's Recording Of His Own Statement While An Agent.**

This Court reviews *de novo* Sixth Amendment Confrontation Clause challenges. *U.S. v. Johnson*, 440 F.3d 832, 842-43 (C.A.6,2006).

On 6/16/05 Fann while acting as a government operative wearing a recorder, recorded his own statement while allegedly talking to some answering device. [Exhibit 38]

Vassar was not a part of Fann's statement and did not adopt Fann's statement.

Vassar's Sixth Amendment confrontation right prohibited any testimonial statement Fann made to agents at a time Fann was cooperating with the Government. *see Crawford v. Washington,* 541 U.S. 36 (2004). The Founders did not except one-sided statements made by government operatives from the Sixth Amendment Confrontation Clause. *see Giles v. California*, 128 S.Ct. 2678 (2008).

Fann's one-sided recorded statement was Fed.R.Evid. 801(c) hearsay. *see U.S. v. Mooneyham,* 473 F.3d 280 293-294 (C.A.6,2007)

Judge Greer did not make any findings that Fann's statement was made during the course or in furtherance of any conspiracy. *see U.S. v. Vinson*, 606 F.2d 149 (1979)

Unlike *U.S. v. Mooneyham, supra,* substantial prejudice resulted from the erroneous admission of Fann's one-sided statement. It is probable Fann's one-sided statement was the basis of Vassar's conspiracy conviction and the admission of that portion led to Fann testifying that he was talking about other controlled substances in violation of the Court's order. [R.610:OralMotion,ROA.pp.46-47]

Vassar requests his convictions be reversed with instructions on remand to exclude the unilateral recorded statement of Fann from the tape and exclude any Fann testimony as to any "other substance".

### VII. Erroneous Denial Of Fed.R.Crim.P. 16(a)(1)(E)(i) Records For Impeaching Government Witnesses

Construction of a constitutional provision, statute or rule, like any question of law, is reviewed *de novo*. *U.S. v. Ninety Three Firearms*, 330 F.3d 414, 420 (C.A.6,2003)(statutes); *Lucas v. O'Dea*, 179 F.3d 412, 416 (C.A.6,1999)(rules).

Vassar requests this Court hold that Fed.R.Crim.P. 16(a)(1)(E)(i) requires discovery of non-priviliged/Fed.R.Crim.P.16(a)(2) exempt records in the control of the government that are material to Vassar preparing a defense to impeach government witnesses.

Vassar was repeatedly denied Fed.R.Crim.P. 16(a)(1)(E)(i) discovery and use of Fed.R.Evid. 17(c) subpoenas

for records to impeach government witnesses. Ultimately Vassar was denied impeachment records *in toto* or provided partial records at times when Vassar could not investigate or obtain evidence to present at trial as provided in *U.S. v. Garner,* 507 F.3d 399 (6th.Cir.,2007). [R.287:Order,ROA.1093;R.288:Order,ROA.1094;R.290:Order:ROA.1096; R.295:Order,ROA.1108;R.297:Order,ROA.1109]

Vassar drafted questions for declaratory judgment pursuant to 28 U.S.C. § 2201 on these critical issues. Judge Greer declined to rule by declaratory judgment. [R.230:Order,ROA.969] Vassar urges this Court to address the questions submitted in Vassar's request for declaratory judgment. [R.191:MotionDeclaratoryJudgment,ROA.727;R.192:MemorandumInSupport,ROA.732;R.193:MotionDeclaratoryJudgment,ROA.753;R.194:MemorandumInSupport,ROA.758]

AUSA Smith responded to Vassar's discovery motions on 12/15/05 claiming he had exercised "due diligence" to comply with his Fed.R.Crim.P. 16(a) discovery obligations and *Brady* obligations by reviewing the files maintained by the FBI, the TBI, and the THP. [R.96:Response,ROA.276]

Vassar repeatedly filed motions to compel specific discovery. [R.115:MotionCompel,ROA.318; R.145:MotiontoSeal,ROA.493;R.162:MotionforOrder,ROA.594;R.163:Mo

tiontoDismiss,ROA.596:R.164:SuppAppeal,ROA.598;R.165:MotiontoCom

pel,ROA.165;R.167:RespCompeal,ROA.625;R.168:Appeal,ROA.627;R.169

:Appeal,ROA.655;R.170:Appeal,ROA.659:R.171RespDismiss,ROA.661;R.

197:MotionExclude,ROA.783;R.225:MotionExclude,ROA.919;R.173:Orde

r,ROA.665;R.174:M&O,ROA.668;R.175:Order,ROA.678;

R.220:Order,ROA.907]

Pursuant to an Order Prosecutors were required to file a certificate of discovery compliance. Prosecutors filed a certificate that an FBI agent was told by state agents that discovery and disclosures required by federal rules had been provided. Vassar objected to FBI and State agents making Fed.R.Crim.P. 16(a)(1) decisions. [R.242:MotiontoSeal;R.257:MotionLeave,ROA.1034]

Judge Greer denied Vassar's motion to challenge the sufficiency of the certificate of discovery and all pending motions to compel. [R.266:Order,R0A.1083]

On 4/24/06 Vassar filed a motion specifying outstanding discovery supported by affidavit where records were located; why local law enforcement would not produce records; and why Vassar needed compulsory process to obtain records. [R.298:MotionDiscovery,ROA.111;R.299:GovernmentResponse,ROA.1133]

As Vassar's trial approached, the government began to produce some discovery. On 5/25/06 and 5/30/06 Vassar filed

motions for Fed.R.Civ.P. 16(d)(2)(C) sanctions to exclude late discovery.  [R.357:Motion,ROA.1224;R.369:Motion,ROA.1239]

Also on 5/30/06 Vassar filed for sanctions for *Brady-Giglio* violations.  [R.369:Motion,ROA.1239]

On 6/1/06 Judge Greer affirmed the Magistrate-Judge's rulings denying discovery and denied Vassar's motions for sanctions.

[R.398:Order,ROA.1309;R.400:Order,ROA.1311;R.401:Order,ROA.1316]

On 6/6/06 Vassar filed a motion for a continuance to make use of the government's late filed discovery and disclosures and the trial was continued to begin 6/13/06 but Judge Greer refused to exclude late discovery. [R.454:Motion,ROA.478]

Judge Greer held Fed.R.Crim.P. 16(a)(1)(E)(i) (1) does not include discovery of "impeachment" records and (2) *U.S. v. Presser,* 844 F.2d 1275 (C.A.6, 1988) controls the times for the government to provide Fed.R.Crim.P. 16(a) discovery of non-privileged/Fed.R.Crim.P. 16(a)(2) exempt records to impeach government witnesses.[9]

---

[9]   Judge Greer's rulings effectively held that *U.S. v. Presser* trumps Scheduling Order time requirements for Fed.R.Crim.P. 16(a)(1)(E)(i) non-privileged/non-Fed.R.Crim.P. 16(a)(2) exempt records where those records may also be *Brady, Gigilo, Agars and Napue* material.

Chief Justice Marshall, soon after the adoption of the bill of rights, sitting as a trial judge in *U.S. v. Burr* 25 F.Cas. 30 (No. 14,692d)(CC Va. 1807), held that the right to compulsory process includes the right to secure witnesses and papers "material to the defense." *U.S. v. Hubble*, 530 U.S. 27, 54 (2000).

In *U.S. v. Able*, 469 U.S. 45, 50, (1984) the Court held evidence of witness bias, or that testimony is exaggerated or unbelievable, is relevant evidence under Fed.R.Evid. 402 and 608; proper under Fed.R.Evid. 607 provisions allowing any party to attack the witnesses credibility; and proper cross-examination on "matters affecting the credibility of the witness" under Fed.R.Evid. 611(b). *Id.* 469 U.S. at 50-51.

Judge Greer erroneously relied on *U.S. v. Armstrong*, 517 U.S. 456, 463, (1998) to hold non-privileged/non-exempt Fed.R.Crim.P. 16(a)(2) records for "impeachment" of a government witness were not discoverable pursuant to Fed.R.Crim.P. 16(a)(1)(E)(i).

*Armstrong* held Fed.R.Crim.P. 16(a)(1)(E)(i) did not require discovery of records that were not material to challenging evidence the government would introduce at trial to prove a defendant guilt. Unlike *Armstrong*, Vassar sought discovery of Fed.R.Crim.P. 16(a)(1)(E)(i) records to impeach

witnesses the government was going to introduce at trial to prove Vassar was guilty.

Vassar requests this Court grant Vassar a new trial because Vassar was denied discovery of Fed.R.Crim.P. 16(a)(1)(E)(i) non-privileged/non-Fed.R.Crim.P. 16(a)(2) exempt records relevant to impeaching Government witnesses.

## VIII. Denial of Fed.R.Crim.P. 17(c) And Sixth Amendment Compulsory Process

*Review Standard*

This Court reviews *de novo* constructions of Fed.R.Crim.P. 17(c) and Sixth Amendment Compulsory process *de novo. See Issue IX supra.*

Because Vassar could not get Fed.R.Crim.P. 16(a)(1)(E)(i) discovery of non-privileged law enforcement records to investigate and impeach government witnesses, Vassar, on four occasions, issued Fed.R.Crim.P. 17(c) subpoenas to law enforcement agencies for records, including Fed.R.Crim.P. 16(a)(2) exempted records, relating to suspected government witnesses to be delivered to the Court, under seal, for the Court to conduct *in camera* review prior to trial pursuant to Due Process procedures set out in *Pennsylvania v. Ritchie,* 480 U.S. 39, 57-59 (1987).

The first Order on 1/12/06 quashed *in toto* Vassar's subpoenas that had been previously authorized on 1/3 and 1/6. [R.166:TranscriptHearing,ROA.79-86;R.124:Order,ROA.389;EDTN#2:05-cr-70:R.147:Appeal]

Thereafter, repeated disputes and multiple hearings occurred over Vassar's attempted use of subpoenas to obtain records to impeach government witnesses. Vassar's subpoenas were quashed *in toto* without modifications*,* sometimes on motion of the government, and sometimes *sua sponte* by the Court. [R.46:Motion17(c),ROA.134;R.47:Motion17(c),ROA.48;R.166:TranscriptHearing,ROA.79-86;R.124,Order,ROA.389;R.132:MotionQuash,ROA.423;R.133:Order,ROA.428;R.134:MotionAmendRevise,ROA.433;R.142:Order,ROA.470;R.163:MotiontoDismiss,ROA.596;R.164:SuppAppeal,ROA.598;R.184:M&O,ROA.698;R.193.MotionDeclaratory,ROA.753;R.194:Memorandum,ROA.758;R.201:MotionApplication,ROA.796;R.230:Order,ROA.969;R.351:MotiontoQuash,ROA.1195;R.353;MotiontoQuash,ROA.1204;R.354;Order,ROA.1208;R.355:ResptoQuash,ROA.1209;R.384:MotiontoQuash,ROA.1254;R.389:ResptoMotionQuash,ROA.1296;R.390:RespMotionQuash,ROA.1299;R.402:Order,ROA.1318;R.403:Order,ROA.1322;R.405:MotiontoQuash,ROA.1324;R.792:Hearing,pgs.16-63,ROA,16-63].

Judge Greer quashed Vassar's subpoenas because (1) Vassar does not have a Fed.R.Crim.P. 17(c) or Sixth Amendment right to compulsory process prior to trial to obtain records to

impeach government witnesses; (2) *U.S. v. Nixon*, 418 U.S. 683 (1974) restricts Vassar's Sixth Amendment right to compulsory process; (3) Vassar's subpoena rights are not to be construed as broad as subpoenas available to the government in drug cases pursuant to 21 U.S.C. §876; (4) Vassar can not use Fed.R.Crim.P. 17(c) subpoenas to cause records be filed with the Court under seal for the Court to make a *Pennsylvania v. Ritchie in camera* review; (5) Vassar was required to make informal request to agencies for records prior to exercising his Sixth Amendment or Fed.R.Crim.P. 17(c) right to compulsory process; and without permitting modifications quashed subpoenas *in toto* for being overly broad. [R.402:Order,ROA.1318;R.792:Hearing,ROA.16-63]

21 U.S.C. §876 provides the government a right to use "administrative subpoenas" in drug cases for records the government "finds relevant or material to the investigation." §876 subpoenas are not limited to trial; are not subject to review by a Court; are not subject to *U.S. v. Nixon*, 418 U.S. 682 (1974) restrictions; and the defense does not get access to records as is provided for by Fed.R.Crim.P. 17(c).

Vassar urges this Court construe Vassar's Sixth Amendment/Fed.R.Crim.P. 17(c) right to compulsory process in drug cases to be equal to and at least as broad as the government has given its prosecutors pursuant to §876.

51

Sixth Amendment Compulsory Process includes the right to secure papers, in addition to testimony, material to the defense. *U.S. v. Hubbell*, 530 U.S. 27, 54 (2000)(Justice Thomas Concurring Opinion) quoting from *U.S. v. Burr*, 25 F.Cas. 30 (No. 14,692d)(CC Va. 1807).

The Sixth Amendment guarantees compulsory process for obtaining witnesses in the defendant's "favor". Like the Sixth Amendment's right to notice and the right to an attorney, the compulsory process clause is not limited to trial. Obtaining records pretrial in "favor" of preparing to confront and impeach government witness at trial is well within the words of the Sixth Amendment's Compulsory Process clause.

Vassar requests this Court reverse his convictions for the prejudicial denial of and restrictions to his right to compulsory process.

### IX.    Vassar was denied *Pennsylvania v. Ritchie* Due Process.

In *Pennsylvania v. Ritchie*, 480 U.S. 39, 57-60 (1987) the Court applied Fourteenth Amendment Due Process to require a state court review privileged materials pretrial *in camera* to assure the defendant is provided a fair trial. *Id.* 480 U.S. at 60. The Court required both pre-trial review and continuing review during trial where information from the records may "become important as the proceedings progress" that requires the

Court release the information "material to the fairness of the trial."

S.Phillips testified at trial that he had approximately 22 meetings with government agents. [R.710:S.Phillips,ROA.124-125]

Vassar acknowledged FBI 302s, DEA 6s, or TBI reports and notes of those meetings are exempt from discovery under Fed.R.Crim.P. 16(a)(2) and requested Judge Greer review those records for impeaching information of S.Phillips. Judge Greer denied Vassar's request *in toto*. [R.689:Hearing,ROA.1-31]

Prior to D.L.Phillips completing his testimony, Vassar orally moved that Judge Greer review reports and notes of officers interviews of D.L.Phillips. [R.710:D.L.Phillips,ROA.293-294,297,301,302,303]

Judge Greer reported he had been provided reports pertaining to D.L.Phillips and those reports <u>did</u> contain materials that should be provided the defense, however, redactions had to be made because of "ongoing investigations." [R.689:Haring,ROA.1-31]

It remains unclear what FBI/TBI reports or notes were reviewed by Judge Greer. Judge Greer sent the jury home until 6/15/06 and scheduled a hearing for the afternoon of 6/14/06 to provide Vassar redacted copies. [R.689:Ruling,ROA.2-4]

*Ex parte* proceedings between the government and Judge Greer occurred beginning at 2:42 p.m. and ending at 3:10 p.m. on 6/14/06. Those proceedings remain under seal. [R.689:PagesUnderSeal,pp.27-37]

Judge Greer provided the defense 18 pages of redacted FBI/TBI reports relating to D.L.Phillips but redacted information "that relates to ongoing criminal investigations" without making a determination whether disclosure of the redacted information was necessary to provide Vassar a fair trial. [R.689:Ruling,p.38,40-41]

At the end of Thornton's testimony, Vassar moved Judge Greer review the TBI/FBI reports of Thornton. Judge Greer said he had reviewed the reports and made a finding that the records did not contain information that would assist in cross-examination of Thornton. It is unclear whether Judge Greer applied the "ongoing investigation" to deny disclosures.

Vassar moved for Thornton's presentence report in the possession of the Government. Judge Greer denied that motion. [R.712:Hearing,ROA.271]

Judge Greer reviewed a TBI report of Rice's statement and found portions should be disclosed to defendants but excluded other portions presumably applying a "law enforcement privilege." [R.712:Heairng,ROA.53]

There is no "law enforcement privilege" under Tennessee's Public Records Act. *see Schneider v. City of Jackson*, 226 S.W.3d 332 (Tenn.2007).

Fed.R.Crim.P. 16(a)(2) is the Federal Law Enforcement privilege from discovery of internal records including DEA 6s, FBI 302s, TBI or THP memos. That exemption, is subject to the *Pennsylvania v. Ritchie* due process rule that trumps any "ongoing investigation" or "law enforcement privilege" rule for an *in camera* examination for a Court to determine a defendant needs privileged information to obtain a fair trial.

Vassar requests this Court reverse his convictions and order a new trial with instructions that *Pennsylvania v. Ritchie* requires the trial judge review privileged FBI 302s, DEA 6s, TBI memos to assure Vassar his right to a fair trial.

### X.   Improper Arguments By The Prosecutor.

This Court applies a two-step analysis to determine *de novo* as a mixed question of law and fact whether a prosecutor's closing argument constituted prosecutorial misconduct. *U.S. v. Tarwater*, 308 F.3d 494, 511 (C.A.,2002).

Judge Greer sustained Vassar's objections to Fann testifying Fann used code words for uncharged methamphetamine Fann claimed he was buying from Vassar. Fann was instructed to refer to "another substance" when the context required. [R.610:OralMotion,ROA.pp.46-47] In violation of Judge Greer's

directive Fann repeatedly referred to "another <u>controlled</u> substance." Vassar moved for a mistrial. That motion was denied. [R.610:Ruling,ROA.pp.46-47]

In his opening closing statement AUSA Smith improperly emphasized Fann testified Vassar was dealing in "other <u>controlle</u>d substances." [R.794:Argument,ROA.p.9]

AUSA Smith in his closing statements improperly told personal stories about his childhood [R.794:Argument,ROA.p.12]; falsely told the jury Rice will be required to answer for his drug dealings in state court [R,794:Argument,ROA.p.13]; and falsely told the jury "no one involved in this narcotics trafficking is going to escape justice." [R.794:Argument,ROA.p.13]

In his rebuttal closing argument, AUSA Smith called defense arguments a "red herring" [R.794:Argument,ROA.pp.52,58]; "creative fiction" [R.794:Argument,ROA.p.54]; "entirely fiction created by Mr. Moncier" [r.794:Argument,ROA.p.56]; and "simply not true." [R.794:Argument,ROA.p.58]

Vassar's objection to AUSA Smith telling the jury "no one involved in this narcotics trafficking is going to escape justice" was overruled. [R.794:Argument,ROA.p.13] Defense objections to calling defense arguments "red herring" and AUSA Smith referring to evidence ruled inadmissible were denied. [R.794:Objection,ROA.pp.63-68]

EDTN LR 83.6 makes the Tennessee Rules of Professional Conduct applicable to AUSA Smith.

Tenn.Sup.Ct.R. 8, RPC,§3.7 prohibited AUSA Smith from being a witness to the matters he told the jury during his argument; RPC,§3.4(e)(1) prohibited AUSA Smith from alluding to Fann and Vassar dealing in "other controlled substances" after Judge Greer ruled that testimony was inadmissible; RPC,§3.4(e)(2) prohibited AUSA Smith from asserting his personal knowledge about his mother and his childhood; RPC,§3.4(e)(3) prohibited AUSA Smith from stating facts not in evidence and his personal opinion that "no one involved in this narcotics trafficking is going to escape justice"; and RPC§3.4(e)(3) prohibited AUSA Smith stating his personal opinions that Vassar's arguments were "red herrings", "creative fiction", and "entirely fiction created by Mr. Moncier."

Accusing the defense of using "red herring" arguments was disapproved of in *U.S. v. Holmes*, 413 F.3d 770 (C.A.8,2005). *compare U.S. v. Moreno*, 899 F.2d 465 (C.A.6,1990).

Vassar requests this Court find AUSA Smith's arguments were improper and prejudicial; reverse his convictions; and remand for a new trial.

### XI. Incorrect And Misleading Jury Instructions.

Jury instructions are reviewed on appeal as a whole to determine whether they fail to accurately reflect the law or where the instructions "viewed as a whole, were confusing, misleading, or prejudicial." *U.S. v. Prince*, 214 F.3d 740, 760-761 (C.A.6,2000).

### 1. Defense Theory

Vassar was entitled to a charge on his theory of defense despite the strength or weakness of the evidence. *U.S. v. James*, 819 F.2d 674, 675 (6th.Cri.,1987)

Vassar submitted his theory of defense that "Michael Vassar asserts he was addicted to drugs in 2004 and 2005 and that he used cocaine on June 16, 2005 with Rick Fann. Michael Vassar asserts that his only offense was that of simple possession of cocaine on June 16, 2006, a lesser offense charged in Count 3." [R.519:InstructionRequest,ROA.1566]

Judge Greer denied Vassar's requested instruction.

Instead, Judge Greer gave a meaningless, misleading instruction that "Mr. Vassar denies that he distributed cocaine on or about June 16, 2005 as charged". [R.794:Instruction,ROA.83-84]

## 2. Buyer-Seller

Vassar requested a buyer-seller instruction as provided by this Court in *U.S. v. Larson*, 1997 WL 535780*4, (C.A.6,1997) [R.421:InstructionRequest,ROA.1388]

Judge Greer failed to give the instruction.

In *U.S. v. Thomas*, 150 F.3d 743, 745 (7th Cir. 1998) the Court held a buyer-seller instruction was mandatory when raised by the evidence and failure to give the instruction was plain error.

The failure to give instruct on buyer-seller resulted in confusion and misleading the jury as to the difference between a buyer-seller relationship and a conspiracy. *U.S. v. Prince*, 214 F.3d 740, 760-761 (C.A.6,2000).

## 3. Co-Conspirators That Can Be Considered

Vassar requested a specific conspiracy instruction to include the names of persons the jury could consider as co-conspirators. [R.417:InstructionRequest,ROA.1374]

Had the Court specified the potential co-conspirators in the conspiracy charge, if Fann and Rice were not a named conspirator most probably Vassar would have been acquitted of the conspiracy. If the Court included Fann, the Court would have been required to instruct the jury that the 6/16/06 transaction could not be a conspiracy because Fann, as a government agent, could not share the illegal intent to violate

the law to be a second person in a conspiracy. *U.S. v. Pennell,* 737 F.2d 521, 536 (C.A.6,1984).

## 4.    Simple possession.

Where a rational juror could find simple possession of drugs the Court must charge that lesser offense. *U.S. v. Hernandez*, 476 F.3d 791 (C.A.9,2007); *see also Keeble v. U.S.*, 412 U.S. 205, 208 (1973)

Judge Greer denied Vassar's request for a simple possession and a casual exchange instruction because Count 3 charged a distribution, not possession with intent to distribute.

[R.519:InstructionRequest,ROA.1566;R.520:InstructionRequest,ROA. 1569]

Vassar's requested instruction, however, was erroneously denied as to Count-1 where Count-1 did charge an object of the conspiracy was possession with intent to distribute.

Ambiguity of the term "distributed" in Count 3 is similar to ambiguity of "proceeds" recently construed by the Supreme Court in *U.S. v. Santos*, 128 S.Ct. 2020 (2008) making the rule of lenity apply to include a lesser offense of 18 U.S.C. §644*.*

Distributed requires more than a casual exchange of a very small amount, i.e., 6.61-grams; where there is evidence the exchange was between addicts; addicts were using part of the

drug at the time of the exchange; and where the money exchanged between the addicts was for less than 1/2 the value of the drugs, i.e. $125.00.

## 5.   Incorrect Single/Multiple Conspiracy

Vassar requested a single/multiple conspiracy instruction that removed incorrect, misleading and unconstitutional language from the Sixth Circuit Pattern Instruction 3.08 ¶2. [R.418:InstructionRequest,ROA.1379]

The jury was given an instruction that implied Vassar testified and argued the proof established Vassar was in a conspiracy.

"Vassar" did not testify; "Vassar" did not "argue"; "Vassar" had a constitutional right to remain silent; and "Vassar" never asserted the proof "really" established any conspiracy. Whether multiple conspiracies are "involved in this case" was not the issue. The correct issue was whether the Government's proof established multiple conspiracies instead of the single conspiracy charged.

Vassar requests this Court reverse his convictions and remand for a new trial.

## XII.   Vassar's Sentence Was A Product Of Prosecutorial Misconduct By Selective Application Manipulating the USSGs

Based on information Vassar was able to obtain from proceedings in other co-conspirator's cases that was not maintained under seal, Vassar on 11/8/06 filed a motion for relief from prosecutorial misconduct, vindictive, unconstitutional and selective USSGs practices by U.S. Attorneys in Greeneville.

Vassar asserted prosecutors were defeating the Sentencing Commission's policy for uniformity of sentences by a practice of applying a double standard under the USSGs by falsely and secretly manipulating correct calculation of guideline sentences to provide undisclosed benefits to cooperating individuals and punish persons who exercised their Fifth Amendment right not to cooperate and Sixth Amendment right to a jury trial.

This practice was accomplished by prosecutors not reporting real offense conduct, roles in the offense, or upward adjustments to the PSR officer or to Judge Greer to manipulate cooperating individuals guideline calculations downward prior to prosecutors making a §5K1.1 departure motion.

Vassar produced a chart establishing 8 known co-conspirators in the "Phillips conspiracy" had their PSR guideline sentence falsely manipulated downward by this practice

up to 500% from their correct guideline calculated sentences prior to any §5K.1 reduction. [R.715:MotionforLeave,ROA.2442]

In *U.S. v. Presley*, -- F.3d --, 2008 WL 496413691 (C.A.6,2008) this Court, consistent with *Gall*, held the §3553(a)(6) duty of the trial court to "avoid unwarranted sentence disparity" applies to co-defendants in the same case and a disparate sentence among co-defendants is both procedurally and substantively unreasonable.

The practice of prosecutors pre-§5K1.1 manipulation of calculating guidelines of co-defendants violates the Sentencing Commission policy of uniformity provided for by §3553(a)(5)/USSG §1A1.1 and defeats the requirement of *Gall v. United States*, 128 S.Ct. 586, 594-95 (2007) that "[A] district court should begin all sentencing proceedings by correctly calculating the applicable guidelines range."

A district court cannot "correctly" calculate a guideline range where the government does not make required information known to the PSR or the Court. A district court cannot comply with §3553(a)(6) to avoid unwarranted sentence disparity among co-conspirators where prosecutors secretly manipulate guideline sentences among the co-conspirators.

This practice of the executive branch makes congresses sentencing guidelines and the judiciaries *Booker/FannFann* reasonableness test meaningless and creates a mockery of the

Sentencing Commission's policy of uniformity and avoidance of unwarranted sentence disparity.

Selective guideline sentencing by prosecutors is the same as impermissible selective prosecution. *see Heckler v. Chaney*, 470 U.S. 821 (1985); *Wayte v. U.S.,* 470 U.S. 588 (1985).

A prosecutor's discretion is "subject to constitutional constraints." *U.S. v. Batchelder*, 442 U.S. 114, 125, (1979).

The equal protection component of the Due Process Clause of the Fifth Amendment provides that the decision to prosecute may not be based on "an unjustifiable standard such as race, religion, or other arbitrary classification." *Oyler v. Boles*, 368 U.S. 448, 456.

A defendant may demonstrate that the administration of a criminal law is "directed so exclusively against a particular class of persons ... with a mind so unequal and oppressive" that the system of prosecution amounts to "a practical denial" of equal protection of the law. *Yick Wo v. Hopkins*, 118 U.S. 356, (1886).

It is an arbitrary denial of Fifth Amendment equal protection of the law for Prosecutors to apply USSGs differently to punish defendants who exercise their Fifth Amendment right to remain silent and not to cooperate or their Sixth Amendment right to trial.

It is unconstitutionally arbitrary and in violation of the Fifth Amendment due process and equal protection clauses to subjects correct application of the USSGs to the predilections of individual prosecutors by allowing prosecutors to determine who is, and who is not, subjected to a correctly calculated USSG guideline sentence.

Not only did Judge Greer deny Vassar's motion, Judge Greer endorsed and approved of the practice. [R.718:Order,ROA.2447]

Vassar requests this Court dismiss the indictment against him for prosecutorial misconduct by selective guideline sentencing.

In the alternative, Vassar requests this Court reverse his sentence and order his guideline sentence calculated on the jury's verdict be reduced by the same percentage his co-conspirator sentences were manipulation downward by the prosecutors before §5K1.1 benefits.

## XIII.   Vassar Was Sentenced For An Incorrect Conspiracy Offense Of Conviction.

This Court reviews a district court's application and interpretation of the USSGs *de novo*.   *U.S. v. Cousins*, 469 F.3d 572, 575 (C.A.6,2006).

*Applicable Law*

*Gall v. U.S.*, 128 S.Ct. 586, 589 (2007) and *Kimbrough v. U.S.,* 128 S.Ct. 558, 565 (2007) required Judge Greer first

correctly calculate Vassar's guideline sentence. *See also U.S. v. Boles,* 511 F.3d 568, 579 (C.A.6,2007)

*Sentencing Conspiracy Liability*

In *U.S. v. Swiney*, 203 F.3d 397, (C.A.6,2000) this Court held USSG conspiracy sentencing liability is different, and more narrow, than laws creating criminal conspiracy liability in *Pinkerton*. *See also* USSG 1B1.2(d) and Application Note 4; *U.S. v. Vallejo,* 267 F.3d 1154, 1171 (C.A.11,2002). According to *Swiney*, conspiracy sentencing liability is limited to "the scope of the criminal activity the particular defendant agreed to undertake (i.e., the scope of the specific conduct and objectives embraced by the defendant's agreement)." *Id.* 203 F.3d at 209.

*USSG 1B1.3(a)(1)(B)*

§1B1.3(a)(1)(B) provides for sentencing liability for "reasonably foreseeable acts" taken "in furtherance of <u>the jointly undertaken criminal activity</u>...that occurred during the commission of <u>the offense of conviction</u>..." [underlining added]

Vassar's jury was instructed that the fourth "element" of the third conspiracy object included in Count 1 was that the "overall scope of the conspiracy involved...less than 500-grams." [R.794: Instruction,ROA.91-92] This "overall scope...involved" instruction included all conduct of all conspirators not just that conduct Vassar was responsible for.

66

The Court's instruction made the three separate objects of the conspiracy each essential elements of Vassar's conspiracy offense of conviction. It was essential to Judge Greer calculating a correct guideline sentence pursuant to *U.S. v. Swiney*, 203 F.3d 397, (C.A.6,2000) and USSG 1B1.2(d) and Application Note 4 that Judge Greer sentence for the correct object from among the multiple objects charged in Count 1.[10]

Obviously, if the overall scope of the conspiracy offense of conviction involved less than 500-grams, Vassar could not have "reasonably foreseen" the conspiracy offense included a greater amount to constitute relevant conduct under §1B1.3(B).

### Judge Greer Found A Separate Conspiracy

Judge Greer had to find Vassar was a member of a conspiracy for which the object was "the overall scope of the conspiracy involved at least 500-grams but less than 5 kilograms" to hold Vassar responsible for 3.5-5 kilograms of Fan/Rice cocaine. [R.794:Instruction,ROA.85]

### Sixth Amendment Right To Jury

Where multiple objects are charged in one count, Judge Greer was required by §1B1.2(4) and Advisory Note ¶4 to find the object as though he were sitting as trier of fact. This provision of Note ¶4 is constitutionally suspect after *Blakely*

---

[10] USSG §1B1.3, Illustration 7, demonstrates how drug weight can limit a defendant's conspiracy sentencing liability.

*V. Washington,* 542 U.S. 296 (2004). In Vassar's case, however, the jury found the conspiracy object was "an overall scope that involved...less than 500 grams" and thereby limited Vassar's sentencing liability to Vassar's foreseeable conduct within that amount. Issue preclusion and collateral estoppel prohibits Judge Greer from acting as a trier of fact to find a conspiracy object different from the object found by the jury.

Judge Greer incorrectly sentenced Vassar for relevant conduct to an offense of conviction that was different from, and in conflict with, the offense of conviction the jury found.

### *Relief Requested*

Vassar requests his sentence be reversed and he be resentenced for a conspiracy offense of conviction of less than 500-grams for a maximum USSG §2D1.1(c)(Table) offense level of 24.

### XIV. Vassar's Sentence Was Procedurally and Substantively Unreasonable.

### *Review Standard*

This Court reviews a district court's sentence for "reasonableness." *U.S. v. Ming Liou*, 491 F.3d 334, 337 (C.A.,2007).

### *Vassar's Sentencing Position*

Vassar asserted his correctly calculated guideline sentence was a base level 10; Criminal History II; and guideline range 8-14 months. [R.588:SentenceObjections,p.8,¶26,ROA.1751]

AUSA Smith asserted Vassar should be sentenced for S.Phillips and D.L. Phillips' 15-50 kilograms for a base level 34; 2-level increase for obstruction of justice; Criminal History IV; with a guideline range of 262-327 months. [R.585:SentencingMemorandum,p.12,ROA.1732]

*District Court's Sentencing*

Judge Greer rejected the Phillips' testimony to sentence Vassar for 15-50 kilos. [R.721:Sentencing,ROA.200];

Judge Greer accepted the PSR report of 3.5-5 kilos for Fann and Rice; imposed a criminal history IV; imposed 2 levels for obstruction; calculated Vassar's guideline sentence to be 168 to 210 months; applied a reduced departure of 24 months for "fairness" because of the jury's verdict; and sentenced Vassar to 12 years. [R.721:MinuteEntry,ROA.2463;R.728:Judgment,ROA.2479]

*Procedural and Substantive Reasons Vassar's Sentence Is Unreasonable*

## 1. Incorrect §4A1.2 Criminal History Calculation

In 1992 Vassar was sentenced for multiple felonies during a consolidated sentencing hearing. Vassar's sentences were recorded on one consolidated Judgment and Sentence Form.

The PSR recommended, and Judge Greer Ordered, Vassar receive separate criminal history points for each 1992 conviction because there was no separate order of consolidation;

Vassar's transcript and Consolidated Sentencing Form was not sufficient to establish consolidation; and the facts did not establish "functional consolidation." [R.566:Notice;ROA.1662;,R.567:Notice,ROA.1664;R.568:Notice,ROA.1 672;,R.642:MotiontoFile,ROA.2143;R.575:Order,ROA.1677;R.659:Orde r,ROA.2207]

On 11/1/07, by USSG Amendment 709, the Sentencing Commission clarified USSG §4A1.2 by removing the ambiguous words "that were consolidated for sentencing" and replacing those words with "sentences imposed on the same day."

Vassar requests this Court correct his sentence by ordering his 1992 convictions with sentences imposed on the same day be counted as one conviction and he be sentenced as Category II instead of Category IV.

## 2. Incorrect §3C1.1 2-level Increase For Obstruction of Justice

Judge Greer applied §3C1.1 to impose a 2-level increase because Vassar stated to the PSR that Vassar used the term quarter-glass during a taped conversation with Fann on 6/16/05 to refer to a quarter-glass in a Blazer vehicle.

Whether true or false, Vassar's statement was not material to any disputed sentencing determination and did not "pertain to Vassar's offense of conviction" under §3C1.1(A) or relate to Vassar's offense of conviction or relevant conduct under §3C1.1(B).

Vassar request his sentence be corrected by removal of the 2-level increase for §3C1.1 obstruction.

3.  **Incorrect Consideration Of A "Significant Prior Benefit" From Jury That Vassar Did Not Receive.**

Vassar asserted that "fairness" required he be sentenced for the offense he was found guilty of committing, i.e., 6.61 grams or a conspiracy for less than 500 grams.

Judge Greer held "fairness because of the jury's verdict" justified a departure below Judge Greer's guideline calculation of 168 to 210 months to 144 months. [R.721:Sentencing,ROA.pp.200-201]

Judge Greer had already increased Vassar's guideline sentence by approximately 15 years over the 1-year sentence applicable to Vassar's jury verdict offense. Judge Greer's 2 year "fairness" departure was approximately 7.5% of Judge Greer's 15 year sentence increase over the verdict guideline sentence of approximately 12 months for 6.61-grams and approximately 10% of the maximum guideline sentence for 500 grams or less.

Judge Greer granted a lesser departure for "fairness" because Judge Greer considered Vassar had already "reap[ed] a significant benefit from the jury's verdict in that you do not face the mandatory minimum sentence you otherwise would have faced [had Vassar been convicted of 5 or more kilos on the

Phillips' testimony], nor are you subject to a term of life imprisonment." [R.721:Sentencing,ROA.pp.193,200]

Judge Greer, however, held evidence that Vassar committed the more serious Phillips' drug transactions was not supported by a preponderance of evidence. [R.721:Sentencing,ROA.pp. 200]

Vassar did not obtain any benefit from the jury's verdict that Vassar was not guilty of committing offenses Vassar did not commit and Judge Greer found was not supported by a preponderance of the evidence.

Judge Greer's reduction of Vassar's departure because of benefits Vassar did not receive was arbitrary and illegal.

## 4.    Erroneous Denial of Sentencing Discovery

Fed.R.Crim.P. 32(i)(4)(ii) provided Vassar a right to "present any information to mitigate the sentence."

USSG §6A1.3, Commentary, Second Sentence, is the USSGs discovery provision. The Commentary provides "the court must ensure that [Vassar had] an adequate opportunity to present relevant information" to resolve disputed sentencing issues.

Little has been decided on a defendant's right to discovery after trial for sentencing. *see U.S. v. Markin*, 263 F.3d 491, 498 (6th.Cri.,2001)(sentencing discovery appropriate); *U.S. v. Brinson*, 208 Fed.Appx. 420 (6th.Cri.,2006)(Fed.R.Crim.P. 16(a)(1)(E)(i) discovery does not apply at sentencing)

Counsel has been unable to find any case discussing the sentencing discovery provisions of §6A1.3 Commentary, Second Sentence.

Vassar a meaningful opportunity to present materials on disputed sentencing factors by all of Vassar's USSG §6A1.1, Commentary, Second Sentence, motions for sentencing information being denied *in toto*. [R.628:Motion,ROA.2043;R.629:Motion,ROA.2045;R.714:Motion,ROA.2439;R.720:Motion,ROA.2459R.708:Order,ROA.2431;R.716:Order,ROA.2445;R.709:Motion,ROA.2433;R.717:Order,ROA.2446]

Pursuant to this Court's recent opinion in *US v. Presly*, -- F.3d -- (C.A.6,2008) Vassar could not present, and the court could not resolve, Vassar's § 3553(a)(6) sentencing disparity claims without Vassar having the requested information about co-defendants sentencing.

5. **Violation Of USSG §6A1.3 By Timing Of Co-conspirators' Sentencing.**

As discussed USSG §6A1.3, Commentary, Second Sentence, required that Judge Greer "ensure that [Vassar had] an adequate opportunity to present relevant information."

The sentence recommendations of both AUSA Smith and the PSR constituted §3553(a)(1)(6) unwarranted sentence disparity. Vassar moved the court set Vassar's sentencing after co-conspirators who were not asserting §3553(a)(1)(6)

disparity to provide Vassar "an adequate opportunity to present relevant information."

Pursuant to USSG §6A1.3, Commentary, Second Sentence, Vassar's motion was incorrectly denied.

## 6. §3553(a)(6) Unwarranted Sentence Disparity

Prior to *Booker/FannFann,* §3553(a)(1)(4) and (5) provisions to avoid unwarranted sentencing disparity were onstrued to apply only a national standard to determine unwarranted sentencing disparity. After *Booker/FannFann*, §3553(a)(6) makes case-specific unwarranted sentencing disparity among co-defendants a basis to depart below a defendants' guideline sentence.

In *Gall v. U.S.*, 128 S.Ct. 586, 599 (2007) the Court approved the district court making a §3553(a)(6) comparison of Gall's codefendants for case specific unwarranted sentence disparity. *See U.S. v. Presley*, -- F.3d -- (CA6, 2008)

Obviously, to consider §3553(a)(6) case-specific parity, the sentences, and reasons for sentences, of co-conspirator's was necessary.

Vassar is the only of 8 alleged co-conspirators that went to trial and asserted §3553(a)(6) unnecessary sentence disparity. Judge Greer denied Vassar §6A1.3, Commentary, information necessary to determine Vassar's co-conspirators' correct sentencing guideline prior to §5K1.1 benefits. This information was, and remains, necessary for Vassar to present

74

his sentencing claim that his sentence was disparate and the disparity was unwarranted. *See* USSG § 6A1.3, Commentary, Second Sentence.

Vassar, however, was able to present partial facts learned from his trial and from other public records of alleged co-conspirators cases to establish unwarranted sentencing disparity of up to 500% for all of Vassar's co-conspirators' correctly calculated sentences prior to any §5K1.1 reductions.

Judge Greer ruled that the prosecutor's manipulating guideline computation for cooperating co-conspirators before §5K1.1 departures was justification for the gross disparity and therefore there was not "unwarranted" disparity among Vassar's co-conspirators sentences. [R.721:Sentencing,ROA.p.194-195] An argument that somehow prosecutorial discretion can justify sentence disparity was rejected by this Court in *U.S. v. Presley* at pages 3-4*.*

In Vassar's case, unlike *Presley*, the government made no effort to distinguish its recommended sentence for Vassar from any of the sentences for Vassar's eight (8) known co-defendants. The government simply ignored the disparity apparently relying on former law that sentencing disparity was based on a national standard, not within an individual case.

Vassar request this Court hold that the practice of prosecutors manipulation sentences among co-conspirators prior

to providing §5K1.1 benefits, is not a recognized justification to avoid sentencing disparity among co-conspirators pursuant to §3553(a)(6).

## 7.    Erroneous Reliance on PSR For Drug Weight

"[C]ourt[s] may not merely summarily adopt the factual findings in the presentence report or simply declare that the facts are supported by a preponderance of the evidence" including drug weight.    Fed.R.Crim.P. 32(i)(3)(B); *U.S. v. Solorio*, 337 F.3d 580, 598 (C.A.6,2003).

Estimates of weight based on competent evidence are proper, however, estimates "must have a minimal level of reliability beyond mere allegation, and the court should err of the side of caution in making its estimate." *U.S. v. Jeross*, 521 F.3d 562, 570 (C.A.6,2008)

Judge Greer did not analyze Fann or Rice's testimony to find 3.5-5-kilos but instead simply relied on the PSR's weight.  [R.721:Sentencing,ROA.p.192]

It is a mystery how the presentence officer, who did not hear Fann or Rice testify or have a transcript of their testimony, attributed 3.5 to 5 kilograms to Fann and Rice.

Regardless, it was error for Judge Greer not to make an independent finding of weight.

## 8.    Insufficient Evidence of 3.5-5-Kilo Drug-Quantity

Regardless of the PSR's source for its calculation, analysis of Fann and Rice's testimony was insufficient to

support 3.5-5-kilos. Any weight over the Fann 6.61 6/16/05 transaction admitted by Vassar is nothing more than conjecture and speculation and results in an unreasonable sentence.

There was no evidence the substance Rice claimed he saw with Vassar was cocaine. Pure speculation is required to determine weight from Rice's testimony.

Rice's testimony also violates the physical facts rule. Rice testified he started obtaining cocaine from Vassar in the "fall 2004" and stopped when Rice stopped dating Hall. The date Rice stopped dating Hall was established by a criminal warrant taken by Hall against Rice on 8/4/04. As a matter of law Rice's testimony must be disregarded under the "physical facts rule." see *U.S. v. Narciso*, 446 F.Supp. 252, 282-283 (D.C.Mich.1977); *Wood v. United States*, 342 F.2d 708 (8th.Cir.,1965).

Fann's weight testimony again, requires pure speculation. No evidence was offered that what Fann claimed to see in baggies in Vassar's home was cocaine [R.610:Fann,ROA.p.45]; how many days Fann claimed to buy cocaine from Vassar "every day, or two or three times a day"; or how much weight Fann allegedly obtained in those transactions. [R.610:Fann,ROA.pp.45]

To attempt to determine the number of days Fann claimed to get cocaine from Vassar, one must subtract (1) the 6-

weeks to two months before the 6/16/05 transaction Fann had Vassar's dump-truck and had no contact with Vassar [R.610:Fann,ROA.p.20] and (2) the times Fann said Vassar didn't have any cocaine and Fann got his cocaine from Rice. [R.610:Fann,ROA.p.20]

## 9.  Sixth Amendment Right To Jury

*Blakely V. Washington*, 542 U.S. 296 (2004) held the Sixth Amendment requires a jury determine any facts required to be found to increase a sentence over the facts established by the plea or verdict.

In *Cunningham v. California*, 549 U.S. 270, 127 S.Ct. 856 (2007) the Court held that a judge making factual findings for a sentence in an upper range not found by a jury violated the Sixth Amendment.

Later in 2007, Justice Scalia explained in his concurring opinion in *Rita v. U.S.,* 127 S.Ct. 2456, 2476-77 (2007) the Sixth Amendment may be violated by a sentence enhanced by judicial findings of fact regarding the applicable offense level under the advisory guidelines, when such findings increase the maximum sentence to which the defendant may be exposed.  *See also U.S. v. Griffin*, 494 F.Supp.2d 1 (D.Mass.,2007).

In *Vassar's* case the jury made two drug quantity findings, i.e., (1) that Vassar was guilty of a conspiracy involving 500 grams or less and (2) that Vassar was not guilty

of a conspiracy involving more than 500 grams both of which define the offense level under §2D1.2(c)(Table).

These specific findings of the jury prohibited Judge Greer under the Sixth Amendment to contradict the jury's factual findings to sentence Vassar for a higher range guideline sentence.

## 10. Incorrect §3553(a)(2) Findings Vassar's Offense Was "Serious"

Judge Greer stated that 1/2 of the docket for the EDTN was drug offenses and Vassar's use of drugs after being on supervised release made Vassar's offense "serious."

The United States Attorney determines what cases to prosecute on the Court's docket and the fact that the executive branch chooses to take up 1/2 the Court's docket on drug cases is meaningless as to the seriousness of an individual's offense.

Vassar was a drug addict who made a casual exchange of drugs with another drug addict, Fann, for 6.61-grams of cocaine for $125. This constitutes a misdemeanor under Tennessee law and is not *per se* a serious offense. [R.721:Sentencing,ROA.p.186]

Being "Involved with drugs" after supervised release would apply to any drug addict.

The Trial Court's findings of §3553(a)(2)(A) seriousness were arbitrary and the resulting sentence unreasonable.

## 11.  Reliance By Judge Greer On Personal knowledge

Judge Greer at page 192 relied on his own experience to determine how much money Vassar's drug habit was costing Vassar.  [R.721,Sentencing,ROA.pp.191-192]

Relying on personal knowledge was a violation of 28 U.S.C. §455(b)(1) and (5) and Fed.R.Crim.P. 32(i)(1)(B) and unreasonable.

## 12.  Undisclosed Information Known To Judge Greer That Was Unknown To Vassar

Every 18 U.S.C. §3553(a) sentencing factor was disputed by AUSA Smith or Vassar.

Vassar moved Judge Greer to inform Vassar of information the government, or some other co-conspirator, had provided Judge Greer *ex parte, in camera, or* under seal that was material to Vassar's disputed sentencing factors that was not known to Vassar or his Attorney.

Vassar listed potential sources to be (1) search warrant or wire-tap applications that describe Vassar's conduct or the conduct of Vassar's co-conspirators; (2) *ex parte* submissions filed *in camera* in Vassar's or other co-conspirator's cases; (3) presentence reports of co-conspirators with redactions of privileged information not material to their §3553(a)(1)(6) sentence; (5) sentencing memorandums for co-conspirators; (6) §5K1.1 motions for departure for co-conspirators; and (7) law enforcement records documenting co-

conspirator's real offense conduct to compare with Vassar's real offense conduct and sentence.

Without response from the prosecution, Judge Greer denied Vassar's motion for the requested disclosures. [R.608:Motion,ROA.1977;R.612:Order,ROA.1985]

Trial by a judge that is not impartial is a constitutional "structural defect" in the criminal proceeding. *Gray v. Mississippi*, 481 U.S. 648, 668 (1987)

Vassar's sentencing hearing was far more important than Vassar's trial where Vassar received a 12-year sentence for his conviction of a conspiracy involving 500-grams or less.

Vassar asserts that his sentence is procedurally and substantively unreasonable where Judge Greer had knowledge of material facts regarding disputed sentencing factors not known to Vassar or his attorney. Fed.R.Crim.P. 32(i)(1)(B)

Application of this provision turns on whether Judge Greer would rely on the *in camera* information in sentencing.

Generally, in confidential information situations such as attorney-client, there is a presumption that material information is shared. *see Manning v. Waring et al.*, 849 F.2d 56 (C.A.6,1988). Vassar asserts a presumption should be applied to *in camera* information known to Judge Greer.

## 13.  Erroneous Denial Of Acceptance of Responsibility

Vassar admitted the 6.61 Fann transaction in opening statements.

Vassar offered to plead guilty to the 6.61 Fann felony distribution.

Vassar requested, but was denied, a Theory of Defense jury instruction admitting he exchanged the 6.61-grams of cocaine with Fann.  [R.519:RequestedInstruction,ROA.1566]

The PSR recommended Vassar be denied acceptance of responsibility because Vassar did not accept responsibility for Rice/Fann 3.5-5 kilograms.  Vassar, had been found by the jury as being not guilty of the 3.5-5 kilograms and was unaware that the PSR was considering that conduct and prior to the recommendation was not asked to admit or deny that conduct.

Vassar is entitled to receive 2-level reduction for USSG § 3E1.1(a) acceptance of responsibility in the event this Court reverses Vassar's Count-1 conspiracy or determines the evidence was insufficient to support the 3.5-5 kilo weight of Fann/Rice acquitted conduct.

## 14.  Failure To Consider Mental Illness

Judge Greer held Vassar's drug addition was not a §5K1.2/Koons basis to depart below the advisory guidelines. [R.721,Transcript,ROA.198]

Addiction to drugs is a mental illness.  *see Diagnostic and Statistical Manuel* IV, Psychiatric Disorders:

Substance Abuse. *compare U.S. v. Garcia*, 497 F.3d 964 (C.A.9,2007); *U.S. v. Millett*, 510 F.3d 668 (C.A.7,2007); *U.S. v. Miranda*, 505 F.3d 785 (C.A.7,2007)

**15. Failure To Consider USSG §5K1.2 Sentencing Departures**

Vassar filed three motions listing multiple grounds for sentencing departures/variance from guidelines on 10/18/06; 10/25/06; and 11/7/06. [R.589:Motion,ROA.1789;R.603:Supp.Motion,ROA.1926;R.624:Motion,ROA.2031]

Judge Greer's sentence is unreasonable because Judge Greer declined to address the grounds Vassar asserted for departure.

**16. Incorrect Sentencing For Acquitted Conduct**

Vassar acknowledges the *en banc* decision of this Court in *U.S. v. White*, -- F.3d -- (C.A.6,2008). Vassar continues to assert he cannot be sentenced for the *Fann* and *Rice* 3.5 kilos acquitted conduct in the event the Supreme Court determine that acquitted conduct cannot be considered.

**17. Dramatic Increase**

Even if not a violation of Vassar's Sixth Amendment Right to Jury, the dramatic increase of Vassar's sentence of over 1000% over his conviction offense guidelines must, under the Fifth Amendment Due Process Clause and USSG §1B1.2 and §1B1.3 be supported by clear and convincing evidence or proof beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 361, 90

S.Ct. 1068 25 L.Ed.2d 368 (1970); *compare U.S. . Watts,* 519 U.S. 148, 566 fn 2, (1997)

## CONCLUSION

For reasons stated, Vassar requests this Court grant him the relief requested in each issue.

*s/Herbert S. Moncier*
Attorney for Appellant

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief, including footnotes, headings and quotations, is in compliance with the type-volume limitation set out in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure in that it contains 13.990 words including footnotes, as counted by Microsoft Word 8 for Macintosh, the word processing system used to prepare the brief.

*s/Herbert S. Moncier*
Attorney for Appellant

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing Brief has been served electronically upon AUSA Neil Smith, this 5th day of January 2009.

*s/Herbert S. Moncier*
Attorney for Appellant